## SMITH *v.* CITY OF PORTLAND.

### (*Circuit Court, D. Oregon.* April 7, 1887.)

1. DEDICATION—EVIDENCE OF—PLAT ALTERATION.

   Upon an issue as to whether College street, in the city of Portland, Oregon, extends through block No. 138. by virtue of a dedication made by the original owner of the premises, who platted a tract, including the block, as a part of the city, *held* that, although the record of the plat shows that, at some time, a line, since erased, was drawn across block 138, thus representing College street as running through the block, yet the testimony of witnesses, and the appearance of the record itself, satisfactorily demonstrate that the line was drawn by mistake in recording the plat, and was erased at the time, and that the erasure was not the result of a fraudulent alteration, made since.[1]

---

[1] Respecting the dedication of a street to public use by making and recording a plat on which it is designated, see Fulton v. Town of Dover, (Del.) 6 Atl. Rep. 633; Donohoo v. Murray, (Wis.) 22 N. W. Rep. 167; Quinn v. Anderson, (Cal.) 11 Pac. Rep. 747, and note; San Leandro v. Le Breton, (Cal.) 13 Pac. Rep. 405.

2. SAME—ESTOPPEL—REFERENCE TO MAPS.

> The sale, by the owner of the tract platted, of lots not bounding on College street, by reference to other maps, not made by him or recorded as his dedication, would not amount to a recognition of the correctness of those maps in regard to College street, and, although College street were represented on them as running through the block, a dedication should not be inferred therefrom, the official map showing the contrary; especially as against purchasers who purchased and made valuable improvements, relying on the latter.

3. PARTIES—INJUNCTION—TRUSTEE—CESTUIS QUE TRUST.

> To a suit brought by a trustee to enjoin a city from improving as a street, private property belonging to the trust, the *cestui que trust* need not be made a party, as the relief sought in no way affects the relations of the trustee and the *cestui.*

4. PLEADING—VARIANCE—SUIT IN CAPACITY OF TRUSTEE.

> If, in a bill in equity to enforce the rights of a property owner, the plaintiff is alleged to be the holder of the legal title in trust for certain other persons, it is immaterial that his evidence shows that he had bought the interest of the beneficiary before the filing of the bill, and is, therefore, in reality, the absolute owner.
>
> Before SAWYER, C. J.

*John Catlin,* for complainant.
*A. H. Tanner* and *Chas. H. Casey,* for defendant.

SAWYER, C. J. This is a bill in equity to enjoin the city of Portland from improving, as a street, what is claimed by the city to be a part of a public street, and by complainant not to be a street, but private property owned by him. The question is whether the land is a part of College street, or a part of block 138.

The land is a part of the donation claim of Stephen Coffin, patented to him by the United States, and by Coffin laid out into a part of the city of Portland. On December 4, 1867, Coffin filed a map of that portion of the city laid out on his donation claim, duly executed and acknowledged by him, in the county clerk's office of Multnomah county, which map was duly recorded in Book H of Deeds, on pages 158 and 159. This is the only map of the city filed by Coffin, and is the public record of his dedication, and, presumptively, is the map to control the location of the streets, blocks, and lots of the city, so far as it lies within the boundaries of his land. Unless Coffin either dedicated this part of land in question for a street, or the city has otherwise since acquired the title for that purpose, by purchase, condemnation, or other lawful means, it remains private property; and the city cannot appropriate or interfere with it without making due compensation. On February 11, 1869, about fourteen months after filing the plat, Coffin conveyed to Jeanette Davis "fractional block No. (138) one hundred and thirty-eight, as designated in recorded map of S. Coffin's land claim, as recorded in Book H, on pages 158 and 159 of the county records of Multnomah county, state of Oregon, and situate in the city of Portland;" being the block embracing the land in question, unless there was a street that covered it.

It will be seen that the block was conveyed "as designated in the recorded map." On the recorded map, as it now appears, College street does not extend across block 138, or between blocks 138 and 139, and

this strip of land is a part of block 138, and within the block as conveyed by Coffin. If there were nothing else, this would settle the question, because, according to the map dedicating public streets, there is no street there, and the land in question on this map forms a part of block 138. The complainant, by various mesne conveyances, has become vested with the title acquired by Mrs. Davis.

Soon after the conveyance by Coffin, his grantee built a house in what is now claimed to be the street, and it has been occupied by the owners of the block ever since it was built. The record shows that at some time a line was drawn across block 138, which would show College street to run through the block. This has been erased. It was claimed by the city that this erasure occurred within the last two years before the bringing of the suit, and that the record has thus been mutilated. But it was proved beyond all doubt, as it seems to me, by reliable witnesses, among them surveyors and others, who have had occasion from time to time to examine the record carefully, that it has been in the condition now shown for many years. By the testimony of the witnesses, the appearance of the record itself, the character of the ink and handwriting, location of the figures numbering the blocks, and other circumstances, I am satisfied that this line was drawn by mistake in recording the map, and erased at the time, and numbered after the erasure was made. The mistake would be quite likely to occur, as the block is on the edge of Coffin's land, where it joins a line beyond which the direction of streets is changed, so that at the intersection gores are formed. Block 138 is one of these gores, and not a full block.

If College street were run through on the broad side of the block, it would leave a small part, almost a triangle. In laying down his rule on the southerly side of College street, by the copyist, the southerly line of Coffin's land was probably covered, and, without noticing the situation, the line was probably run across the block, and, when discovered, erased before numbering. There are some other blocks, on that line of Coffin's claim, similarly situated, in which, as in this case, the streets are not extended through the gores. I am satisfied that this erasure was made as a correction of a mistake at the time the record was made, and that there has been no mutilation of the record as then made. The city has undoubtedly taxed this piece of land, from time to time, as a part of block 138; and it has been more than once assessed as a part of said block by the city for the improvement of the adjacent property, and such taxes and assessments have been paid by those claiming the property through the said conveyances from Coffin, and who have always occupied it.

There is some testimony, more or less improbable, in view of well-established facts, that the house was built by the consent of the city officials, with the understanding that it should be removed when the land should be wanted for a street. But if this were so, of which there is much doubt, it does not settle the question of title. The official map of dedication shows this land to be a part of block 138, and, not long after the map was filed, Coffin, the man who dedicated the streets, sold

it, describing in his conveyance in express terms block 138 as the block is shown on this map, thus indicating that he did not then regard this land as a public street. Located as it is, there did not seem to be any necessity for a street here.

There was an attempt to show that Coffin had sold lots both before and after the filing of this map, by other maps, upon which College street was shown as running through this block; and that, therefore, he had, by recognizing such maps, practically made a dedication prior to the filing of his own map. It is doubtful whether this evidence is admissible under the pleadings. I believe the district judge refused to allow an amendment to the answer at a late stage of the case, for the purpose of letting in such testimony. However this may be, the evidence is unsatisfactory to show a prior dedication. But had he sold other lots by other maps, the parts of those maps where the lots sold are located may have been entirely correct, and, being so, the maps not being his dedication, a sale of lots properly laid down by descriptions referring to those maps would be no recognition of the correctness of those maps in other parts where they were erroneous, and to which his attention may not have been attracted. There was no evidence that he sold any lots bounded on College street at this point, or in any of the other gores, through which streets were run on some of the maps gotten up by real-estate agents. Since we have his own map, duly attested and recorded, by which he made his public dedication, the most satisfactory testimony should be required to establish a dedication other and different from that; and especially so when it is not as against him that the fact is sought to be established, but as against strangers, who have purchased the land by the official map of record, paid a valuable consideration therefor, and since expended considerable sums in building, grading, and otherwise improving it.

In my judgment, no valid dedication of a public street has been shown to have been made of the land in question, and that it is still private property in the hands of the complainant.

It is urged by defendant that complainant in his bill has alleged a legal title in himself, but in trust for another party; that the *cestui que trust* is an indispensable party; and the bill must be dismissed for want of parties. If this proposition be not sound, then that the proofs show that complainant did not hold it in trust, as alleged; because he had before the filing of the bill purchased the interest of the *cestui que trust*, so that he was at the commencement of the suit fully vested with both the legal and equitable title; that his proofs do not make the case set out in his bill, and it should be dismissed for that reason. As to the first proposition, the case seems to me to be clearly within the principle laid down by the supreme court in *Carey* v. *Brown*, 92 U. S. 171, wherein it is held that, "where a suit brought by a trustee to recover trust property or to reduce it to possession, in nowise affects his relations with his *cestui que trust*, it is unnecessary to make them parties." Now, the relief sought in this case in no way affects the relations of the trustee with his *cestui que trust*.

As to the second proposition, the bill shows the legal title to be in complainant; and this, without anything more, is sufficient to entitle him to the decree. If there are other relations existing, shown by the bill and testimony, or either, that would not affect his right to the relief asked. This fact cannot change the aspect of the case. It is at most mere matter of surplusage in the bill, and the proof corresponding with it makes it nothing more. If he is entitled to the relief sought on the legal title, without making the *cestui que trust* a party, he certainly is when the latter is a party. And it can make no difference who the *cestui que trust* is, whether himself or some other party. He would be entitled to the relief without the allegations of the trust, whether a trust exists or not; and he would be entitled to the same relief with the allegations of the trust, if proved. On either hypothesis, he would be entitled to relief.

I think complainant is entitled to the decree prayed, with costs, and it is so ordered.