NOTE.—The law as to extortion in a case similar to the one at bar is clearly laid down by Judge Barrett in People *v.* Wilzig (4 *N. Y. Crim. Rep.* 403).

Court of Appeals.

*October*, 1887.

(*Affirming* 5 *N. Y. Crim. Rep.* 551.)

PEOPLE *v.* DRISCOLL.

MURDER—REVIEW OF CASE BY COURT OF APPEALS—EVIDENCE—CONCLUSIONS—CODE OF CRIMINAL PROCEDURE, SECTION 528.

Section 528 of the Code of Criminal Procedure (ch. 493, L. 1887), vesting the court of appeals with jurisdiction to examine and determine, upon the whole case, whether it is satisfied "that the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether any exceptions shall have been taken or not in the court below," enlarges the jurisdiction of that court, and requires it to review the facts in every

capital case, to determine whether there is good and sufficient reason for setting aside the verdict of the jury and granting a new trial, the intention of the legislature being to vest the court of appeals with power to disregard the neglect or omission of the accused to take the customary objections and exceptions, and to grant a new trial, when such a course would be, in its opinion, in furtherance of justice and the humane administration of the law.

These provisions of the Code do not, however, authorize the appellate court to disregard the effects of valid exceptions taken, by the defendant, on the trial, or excuse him from complying with the settled rules of practice, or exempt him from the duty of presenting the usual and ordinary questions arising, on the trial, in the form and manner heretofore pursued.

In the discussion of the broad question, in the appellate courts, as to whether substantial justice has been done, upon the trial, the accused may, under the act, urge a review upon the merits of the case regardless of exceptions; but the power to charge the result being discretionary in the court, he cannot insist upon the provisions of the act, as a matter of right, and in reviewing the various incidental questions arising during the progress of the trial, and the exceptions taken to the admission and exclusion of evidence, or to the instructions of the court, regard must still be had to the established rules of law regulating such proceedings.

The fact that a crime was committed in a den of vice and immorality, and in the presence of vile and abandoned profligates, will not shield a criminal from the just consequences of his crime.

Where testimony in behalf of the defendant, in an action for murder, presents the issue that the crime was committed by a third person, it is no error to admit, in evidence, in rebuttal, the declaration of such third person, made in the course of a conversation immediately following the commission of the crime, that he did not shoot the deceased. The defendant, in such case, having voluntarily presented the issue as to the admissibility and effect of the conversation of which the declaration was a part, has no right, after obtaining such parts of it as he desires, to shut the door to other parts of the same conversation tending to impair, explain or contradict a declaration proved by himself.

It is not error to refuse to strike out evidence, upon a motion by the defendant, where the same facts have already appeared in the case without objection, or where the motion, if granted, would render the relief asked for a useless proceeding and of no benefit to the defendant.

In a trial, under an indictment for murder, where the defense is that the shot causing the death was fired by a third party, the state may show that immediately after the shooting the person upon whom the defendant endeavors to fix the crime delivered his pistol to an officer, which, being examined by the witness, was found to bear no appearance of having been recently discharged, to wit: that it was fully loaded and the barrel was cold. Evidence that the pistol was fully loaded and appeared to be cold, presented facts perceptible to the senses, and as such are competent in any view of the case.

A party objecting to the admission of testimony must state the grounds of the objection upon which he relies. Hence, if the inference which a witness draws from the facts stated was alone intended to be excluded by the motion, it should be particularly referred to by the moving party. But inferences or conclusions which are the legitimate deduction from facts stated, and which would be made by the jury even without the testimony of witnesses, can do the defendant no harm, and are therefore not objectionable upon a motion to exclude on that account.

Appeal by the defendant, Daniel Driscoll, from a judgment of the general term of the supreme court in the first judicial department, entered upon an order, affirming a judgment of the court of general sessions for the city and county of New York, after a trial resulting in a verdict of the jury convicting the defendant of the crime of murder in the first degree.

The material facts are stated in the opinion.

*William F. Howe,* for defendant, appellant.

*McKenzie Semple* assistant district attorney, for the people, respondent.

RUGER, Ch.J.—The questions involved in this appeal are so fully and satisfactorily discussed in the opinion of BARTLETT, J., at general term (5 *N. Y. Crim. Rep.* 551), that it is unnecessary to go much into detail, in giving our reasons for affirming the judgment of the

court below.  In capital cases, however, it has been the custom of this court to state with some particularity the grounds upon which its decision is based, although it may involve, to some extent, a repetition of the views expressed by other courts.

The record in this case shows that the defendant was tried September 27, 1886, in the court of general sessions of the city and county of New York, upon an indictment charging him with the crime of murder in the first degree, in having killed one Bridget Garrity, by discharging at her a pistol loaded with gunpowder and bullet, which latter penetrated her body and caused her death.  The crime was alleged to have been committed on the 26th day of June, 1886, and the evidence showed it to have been perpetrated at about four o'clock in the morning at No. 163 Hester Street, New York, in a building occupied by one John McCarthy as an assignation house.  The witnesses of the homicide were principally persons of disreputable character, and their evidence was very contradictory and incapable of being altogether reconciled or harmonized.  In this conflict of testimony it became the duty of the jury to determine which of the versions given by the eye-witnesses of the transaction was the true one, and the defendant was found guilty of the crime.  Upon appeal the general term of the supreme court affirmed the conviction.  Subsequent to June 20, 1887, this appeal was taken from the judgment of affirmance.  By chapter 493 of the Laws of 1887, section 528 of the Code of Criminal Procedure was so amended as to vest this court with jurisdiction to examine the record and determine, upon the whole case, whether it is satisfied " that the verdict was against the weight of evidence, or against law, or that justice requires a new trial, whether any exceptions shall have been taken or not in the court below."  This provision has very much enlarged the jurisdiction and the labors of this court, and requires us to review

the facts in every capital case, and to determine whether, upon all of the evidence, there is, in our opinion, good and sufficient reason for setting aside the verdict of the jury and granting a new trial. The powers conferred by this section are similar to those formerly given to this court in certain cases by chapter 337 of the Laws of 1855, as amended by chapter 330 of the Laws of 1858, and to the supreme court by section 527 of the Code of Criminal Procedure (O'Brien *v.* People, 36 *N. Y.* 276).

It seems to have been the intention of the legislature to vest this court with power, in its discretion, to disregard the neglect or omission of the accused to take the customary objections and exceptions on a trial, and to grant a new trial, when such a course would be in furtherance of justice and conduce to the humane administration of the law. These provisions, however, do not authorize the appellate court to disregard the effect of valid exceptions taken by an accused party on the trial (O'Brien *v.* People, *supra*), or excuse such party from complying with the settled rules of practice applicable to the trial of criminal cases, or exempt him from the duty of presenting the usual and ordinary questions arising on the trial of a case in the form and manner heretofore pursued in the trial of indictments.

The omission of counsel for the defendant to make the proper objections and take exceptions to alleged erroneous proceedings would, under the amendment referred to, seem to deprive him of the privilege of claiming, as matter of right, in the appellate court, the benefit of errors occurring on the trial, and remit him to an appeal to the discretionary power of the appellate court, which arises when, upon an examination of the whole case, it appears affirmatively that injustice has been done to the accused in the result arrived at by the trial court. In the discussion of the broad question in the appellate tribunal as to whether substantial justice has been done to the accused upon his trial, it is open

to him now to urge a review upon the merits of the case, regardless of exceptions, but in reviewing the various incidental questions arising during the progress of the trial, and the exceptions taken to the admission or exclusion of evidence, or to the instructions of the court, regard must still be had to the established rules of law regulating such proceedings. The effect to be ascribed to provisions similar to the one in question in appellate courts has been heretofore the subject of some discussion in the cases, but without eliciting any certain or well-defined rule as to the precise extent and character of the jurisdiction conferred by similar provisions (Wilke v. People, 53 *N. Y.* 525 ; Levy v. People, 80 *Id.* 327, 336 ; Ferris v. People, 35 *Id.* 125 ; People v. McCann, 16 *Id.* 58 ; O'Brien v. People, 36 *Id.* 276).

The general rule derived from these authorities seems to be to leave it discretionary with appellate courts whether they will give effect to claims of error or illegality in particular cases, when the error is not pointed out on the trial and objections and exceptions taken thereto in the usual manner. A brief statement of the leading features of the evidence will serve to show the reasons which have led us to approve the verdict of the jury. That Bridget Garrity was murdered at the time and place alleged, and in the manner charged, was not disputed on the trial, and the only issue of fact tried was whether the fatal shot was discharged by the defendant or some other person. The defendant attempted to show that it was fired by John McCarthy. The uncontradicted evidence showed that, about two weeks previous to the homicide, an altercation arose between the defendant and McCarthy in the streets of New York, and McCarthy, upon that occasion, discharged two pistol shots at the defendant with an apparent intent to kill him, but in fact inflicting no injury upon him. It does not appear that these parties met again until the morning of the murder.

The crime charged in this indictment was committed upon the first floor of McCarthy's house. This consisted of a hall and a front and back room lying alongside of and to the left of the hall. The hall extended from the front to the back of the house, and two doors opened therefrom into the back and front rooms, respectively, and these rooms opened into each other by large folding-doors. The defendant's version of the transaction is that at about midnight of June 25, 1886, he met another man and two women, one of whom was the deceased, at a drinking-saloon in Worth Street, and they continued together from that time until after the shooting. For several hours of the night they wandered from one saloon to another, drinking frequently at each place visited, until finally they reached McCarthy's house, and, without any apparent or plausible reason for doing so, entered it, the deceased going first, followed by the defendant and their companions. Immediately upon entering the hall they advanced through it to the door opening into the front room, and entered it, Garrity leading the way, and as she stepped into the room, a shot was fired by some one inside which killed her. The defendant did not recognize the person who fired the shot, but his male companion testified that it was McCarthy. They both testified that Driscoll did not fire a pistol at all that night. Driscoll testified that after this shot he immediately ran away, and remained in hiding until discovered and arrested by the officers of the law. There was much direct evidence given on the part of the people to controvert this version of the crime, and the circumstances seem to us to contradict it and point with much force to the defendant as its perpetrator.

At the time of the shooting six or eight persons occupied the rooms where it occurred; some of them were asleep, others were playing cards, and still others were watching the game and engaged in conversation. Mc-

Carthy was in the front room, and he testified that when the door opened and the deceased entered, he saw the defendant behind her and immediately advanced to the door and shoved him out of the room; that immediately thereafter he saw a pistol protruded through the door and fired into the room; that he immediately ran between the folding-doors through the back room, and jumped out of the window into the yard behind the house; from there he entered the basement and, while there, heard a second shot fired apparently in the hall above; that he went directly from the basement into the upper hall and out into the street, and, after being absent about fifteen minutes, returned to the scene of the affray, where he found the deceased lying on a bed in the back room, and a physician and some policemen standing about the bed.   McCarthy also testified that he did not fire off a pistol during this affray.   One Carrie Wilson testified that she was in the hall when Garrity and Driscoll entered, and that they advanced to the door of the front room, which Garrity opened and entered, and, as she saw McCarthy, gave a signal to Driscoll, who advanced to the door and fired a pistol into the room, whereupon the door was crowded back against him and he then went to the door of the back room and, after forcing it open, pointed a pistol into the room and fired again; that the ball discharged therefrom struck Garrity, who was standing at the folding-doors between the two rooms, and she fell to the floor.

Two witnesses, who were in the rooms at the time of the occurrence, testified that two shots only were fired, both coming from the hallway, the first one being shot through the door of the front room, and the last one through the door of the back room, whereupon Garrity exclaimed, "I am shot," and fell to the floor.   They also testified that McCarthy, as well as most of the occupants of the rooms, had jumped out of the back window before the fatal shot was fired.   After the affray a ball of larger

calibre than that used in the McCarthy pistol was found imbedded in the wall of the front room, nearly opposite the door opening into the hall. Immediately after the shooting the defendant was discovered running from the scene of the affray, dressed in a sack-coat, with his right hand in his pocket, and, upon being pursued, was found within fifteen minutes after the shooting in a dark room in a house occupied by his mother, near the place of the affray, lying on the floor behind a door, dressed only in his shirt and pantaloons. His sack-coat had disappeared and could not be found. Upon being arrested he stated that he had been sleeping there since eight o'clock the night before, and denied that he had been at McCarthy's during the night. It further appeared that Driscoll, Garrity, and their two companions were met in the street shortly before the shooting by a policeman, and as he passed them Driscoll was heard to say to Garrity, "You damned bitch, I will kick you into the gutter; you won't stick to me;" to which Garrity replied, "Yes, Dan, I'll stick to you; you shoot him and I'll stick by you." It also appeared that immediately after the shooting Bridget Garrity, while lying upon the bed in McCarthy's house, stated, in the presence of a physician and the policeman, in answer to a question put to her by one of them, that McCarthy had shot her. McCarthy, who was present, immediately denied the accusation and produced a pistol from his pocket, which he delivered to the officer. This pistol was fully loaded, its barrels were cold, and none of them appeared to have been recently discharged. Garrity again, after having been removed to the hospital, stated to one of the physicians in attendance that McCarthy fired the shot which killed her. On another occasion, on the same day, when she became conscious that her wound was fatal and that she must soon die, she told her mother that the defendant fired the pistol which wounded her. About five o'clock of the same day she expired from the effect of the wound in-

flicted upon her. Both McCarthy and Driscoll were immediately arrested, and were each charged in the police court with the commission of the crime, but subsequently McCarthy was released from the prosecution for murder and held as a witness to the crime. Upon these facts the jury found the defendant guilty of the crime of murder, and we find no sufficient reason for disturbing their verdict.

Assuming the competency of the declarations made by Garrity as to the identity of the person who shot her, they were entitled to but little weight in view of the fact that she was an accomplice in the commission of the crime, and the confederate of the defendant. Her subsequent declaration, made in view of her approaching death, that the shot was fired by Driscoll, quite nullified the effect of her previous statement. That the killing of Bridget Garrity by the defendant was not intended appears altogether probable from the evidence, but that it occurred while he was endeavoring to shoot McCarthy out of revenge for the previous attempt by McCarthy upon his life, seems natural and probable from the character and condition of the man, and the influences which generally inspire and control the conduct of men leading the life, and subject to the habits and passions, of the defendant. It may well be inferred from the evidence that the defendant had a motive in going to the house of McCarthy and endeavoring to shoot him, and the conversation occurring between him and Garrity shortly before the affray shows that he was influenced by it, and that it was then controlling his conduct and prompting his action. His flight from the scene of the crime and his attempt at concealment, together with his denial that he was present on that occasion, afford some evidence of consciousness of guilt, and this is strengthened by the fact that he threw away or concealed his coat, presumably containing the instrument with which the crime was committed. The fact that a pistol-ball

was· found in the wall of the front room opposite the door is apparently in conflict with the version of the transaction given by the defendant, and strongly corroborates the account of the affray given by the prosecution. The place where the homicide was committed, in McCarthy's own house, and the unseasonable hour of the night, show that McCarthy was neither contemplating a crime, nor anticipating its commission, but was apparently pursuing his usual, though disreputable, avocation, when rudely interrupted by the violent and unjustifiable intrusion of the defendant and his accomplices into his house, and their onslaught upon its inmates. That this was a deliberate and premeditated intrusion, and had crime as its object, seems to be a natural and legitimate deduction from the circumstances. of the case as developed by the proof.

While it would have been more satisfactory if the guilt of the defendant had been altogether established by the testimony of reputable witnesses, free from any imputation of interest or improper motives, yet such evidence cannot often be procured as to crimes committed in the haunts of vice and dissipation, and in such cases the truth must be sought by the aid of such means as the situation affords. It should not shield a criminal from the just consequence of his crime .that it was perpetrated in a den of vice and immorality, and in the presence of vile and abandoned profligates, if enough can be derived from the testimony and circumstances of the case to satisfy a jury, beyond a reasonable doubt, of the identity of the person committing it. The law is. framed to protect the rights of the wicked and vicious, as well as those of the virtuous and upright, and no excuse can be made for an omission to do so by the courts, except absolute inability, on the part of the officers of justice, to produce reasonable and sufficient proof of the guilt of the wrong-doers. In·this case we think such proof was produced and such corroboration.

was afforded to the testimony of the inculpated witnesses as justified the verdict rendered by the jury.

Some exceptions were taken by the defendant, during the course of the trial, to the admission of evidence bearing upon the issues in the case, but we are of the opinion that none of them were well taken. It may be said, with reference to all of them, that the facts attempted to be excluded by the objections had already been proved in the case by evidence not objected to by the defendant, and were legitimately before the jury for their consideration when the effort was made to exclude further proof of the same facts.

Among other things, it was claimed that error was committed by the trial court in admitting evidence of the declaration of McCarthy, that he did not shoot Garrity, made in the course of a conversation immediately following the commiss.on of the crime. It does not seem that this evidence, even if improperly admitted, could have had much weight with the jury, inasmuch as McCarthy had already testified that he did not, in fact, discharge a pistol, and it would not be likely to give more weight to his unsworn declaration than it accorded to his sworn evidence ; but we are of the opinion that the evidence was competent under the circumstances of the case. The issue was presented by the defendant, that the shot which killed Garrity was discharged by McCarthy, and it was in rebuttal of the defendant's evidence that the declaration was admitted. McCarthy was a witness in the case, subject to the same rules applicable to the testimony of other witnesses, except that his testimony was given under the influence of a motive, and required stricter scrutiny, on the part of the court and jury, than that given by more disinterested persons. The defendant upon the cross-examination of McCarthy, had been allowed to draw out the fact that Garrity, immediately after the shooting, and while lying upon the bed in the back room of McCarthy's house,

stated, in reply to a question put to her by a bystander, that McCarthy or the "man with red whiskers" had shot her. This statement was in fact made in the presence of McCarthy, and his declaration was made in reply to this accusation. The statement made by Garrity was not objected to by the people, as it well might have been, for she did not then appear to be laboring under any apprehension of death, and it was neither competent as an *ante-mortem* declaration nor as part of the *res gestæ,* (Waldele *v.* N. Y. C. & H. R. R. Co., 95 *N. Y.* 274.) Such a statement made in the presence of McCarthy, if not denied by him, could, however, hardly fail to have had an important influence upon the deliberations of the jury, and it might reasonably have inferred, from his silence under such an accusation, that he acquiesced therein. The circumstances emphatically called for a denial from him if he proposed to contest its truth, and the absence of such denial would have given a false impression as to the weight and force to be ascribed to the charge made by Garrity.

The defendant, having voluntarily opened the issue as to the admissibility and effect of the conversation, had no right, after obtaining such parts of it as he desired, to shut the door and object to other parts of the same conversation tending to impair, explain or contradict the declaration proved by himself (People *v.* Jones, 106 *N. Y.* 523, 8 *N. Y. Crim. Rep.* 400; Homer *v.* Everett, 91 *N. Y.* 641). The effect of the defendant's contention is that he was entitled to the benefit of an implied admission of the charge of McCarthy's guilt, when, in truth, the accusation was promptly denied; or, in other words, that he had acquired a vested right to the use of an uncontradicted accusation, when, in fact, it was immediately disputed. The law is confesssedly tender of the rights of accused persons, but it is hardly subject to the charge of authorizing them to

build up theories of innocence based upon fictitious or fraudulent assumptions.

It is further claimed by the defendant that the evidence in relation to the delivery by McCarthy of his pistol to the officer and its production on the trial was error. Evidence that McCarthy had a pistol in his possession at the time of the conversation with Garrity, immediately after the shooting, and that he then delivered it to the officer, at which time none of its barrels were empty, was admitted without objection on McCarthy's direct examination, and was more fully detailed by that witness upon his cross-examination by the defendant. Subsequently, upon an attempted repetition of some of this evidence by another witness, and after it had been received without objection, the defendant's counsel moved to strike out the testimony of the witness as to what McCarthy said and did, on the ground that the defendant was not present and that it was incompetent. The court denied the motion and the defendant excepted. We think there was no error in this ruling. The fact that the same evidence already appeared in the case, not only without objection, but upon the examination of witnesses by defendant, would render the relief asked by the motion, if granted, a useless proceeding and of no benefit to the defendant.

We are also of the opinion that the evidence was competent as an incident to the conversation, and a pertinent fact to be taken into consideration by the jury in determining the weight and effect to be given to the charge made by Garrity. The production of a fully loaded pistol, so soon after the shooting, by McCarthy, and bearing no appearance of having been recently discharged, tended to corroborate and give weight to the statement made by him, that he did not fire the shot that killed Garrity. This was competent evidence for the people in answer to the defendant's attempt to fasten the responsibility for the crime upon McCarthy. Its

force and effect was for the jury, but it was competent upon the question as to whether McCarthy had fired a pistol on that occasion. The subsequent production of the pistol on the trial was entirely immaterial, and added nothing to the force of the facts already in evidence.

The motion to strike out the answer of the witness Monahan, to a question put by the court, was properly denied. The witness had already stated, without objection, that in company with other officers, immediately after the shooting, he had examined the pistol and found that "it had not been fired off; that the barrel was cold; it was not warm; there was no indication that the shots had been fired off; they were still full." The court recapitulated these facts to the witness. and asked him if that was right, to which he replied, "Yes, sir." The defendant's counsel then said, "I ask that that be stricken out." The motion was denied. We see no error in this. No ground was stated for the motion, and most of the evidence was undoubtedly competent. The evidence that the barrels were full, and appeared to be cold, were facts perceptible to the senses, and were competent in any point of view. The inference that the pistol had not recently been discharged was a legitimate deduction from the facts stated, and would have been made by the jury even without the testimony of witnesses, and could not possibly have harmed the defendant. If the inference which the witness drew from the facts was alone intended to be excluded by the motion, it should have been particularly referred to. As it was, the motion called for too much and was properly denied.

Two exceptions to the refusal of the court to charge as requested by the defendant are called to our attention, and urged as error, in the appellant's brief. The charge as made was full, fair and unexceptional, and fairly covered all of the questions presented by the evidence on the trial. The disposition made of these questions by Judge BARTLETT, in the opinion delivered at general term, is

so manifestly proper and correct that it needs not that we should add anything to what is said by him on the subject.

The judgments of the courts below should be affirmed.

All concur.

Judgments affirmed.

### Note on Discretion of Court of Appeals in Appeals in Capital Cases.

This well-known case was the first decision under the amendment of section 528 of the Code of Criminal Procedure by L. 1887, ch. 493, giving to the Court of Appeals power to order a new trial in capital cases if it is satisfied that the verdict was against the weight of evidence or against law, or that justice requires a new trial, whether any exception shall have been taken or not in the court below.

The effect of the amendment of 1887 has been construed by the Court of Appeals in several cases.

It was the intention of the legislature by this amendment to invest the court of appeals with the jurisdiction formerly possessed by the supreme court to grant new trials in criminal cases. In such cases the court of appeals must be able, upon a review of the proceedings, to reach the conclusion that injustice has been done on the trial before it is justified in setting aside the verdict. The fact that there was on the trial a conflict of evidence is not alone a ground for setting aside a verdict by that court (People v. Cignarale, 6 N. Y. Crim. Rep. 82).

Under this amendment a failure of the defendant in the trial court to make objections and take proper exceptions deprives him of his claim to a reversal by the court of appeals as a matter of right. Under such circumstances he can only ask that court to determine upon the whole case the question whether justice requires a new trial or not, or whether the verdict was against the weight of evidence or the law. The court is then vested with the power to disregard the neglect and review the case on the merits (People v. Lyons, 6 N. Y. Crim. Rep. 105; People v. Kelly, 7 Id. 40).

These provisions were not intended to authorize by the court of appeals the review of findings of fact founded upon sufficient evidence made by the jury, or to reverse judgments simply because of

difference of opinion between the court of appeals and the jury (People *v.* Lyons, 7 *N. Y. Crim. Rep.* 40; People *v.* Trezza, 8 *N. Y. Crim. Rep.* 283).

The power conferred upon the court of appeals by the section as amended does not give to that court arbitrary power to grant a new trial whenever it thinks that justice requires it. Its jurisdiction in such case is to be exercised according to settled rules of law (People *v.* Stone, 7 *N. Y. Crim. Rep.* 430; People *v.* Fish, 8 *N. Y. Crim. Rep.* 129).