THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* ALBERT
P. WICKS, Appellant.

*Grand larceny — allegations of a conspiracy — jurisdiction where a crime is com-
mitted, in part, in two counties — proof of other fraudulent acts as bearing on
intent — technical errors are disregarded upon an appeal.*

An indictment for grand larceny which alleges in effect that, in the town of
Manchester, Ontario county, a conspiracy was formed by the defendant and
others to cheat Frances E. Stewart out of her property, and that the defendant
and another made false representations to said Frances E. Stewart, by which
she was induced to deliver up to them, in the city of Rochester, Monroe county,
her deed and title to certain property in return for a worthless mortgage, is not
demurrable upon the ground that the crime was not committed in the county
of Ontario, and that the County Court of that county had no jurisdiction over
it, but is plainly within the provisions of section 134 of the Code of Criminal
Procedure, enacting that if the "acts or effects" of a crime "occur in two or
more counties the jurisdiction is in either county."

Where a conspiracy has been alleged, proof by the People of other acts of a
similarly fraudulent nature practiced by the same parties upon persons other
than the complainant, is limited in its effect to the question as to the intent of
the defendant in the transaction under consideration.

The question of intent is one for the jury upon all the facts.

The duty of the Appellate Division, under sections 542 and 684 of the Code of
Criminal Procedure, to give judgment after hearing an appeal, without regard
to technical errors or defects, or exceptions which do not affect substantial
rights of the parties, considered.

Where an indictment, in addition to the allegations necessary to establish the
offense of grand larceny, contains allegations of conspiracy, it cannot be said
to charge separate crimes, when the acts of conspiracy were manifestly initiatory
of, and were merged into and consummated by, the crime of larceny.

*Semble,* that in such a case evidence of the conspiracy, although the conspiracy
be not alleged, may be received to establish the crime of grand larceny.

A statement made by the defendant in the words, " I consider that a first-class
mortgage," is to be considered by the jury as an expression of opinion only;
but such a view of the statement taken by the court does not justify a request
by the defendant for the direction of a verdict of acquittal.

APPEAL by the defendant, Albert P. Wicks, from a judgment of
the County Court of the county of Ontario in favor of the plaintiff,
rendered on the 19th day of February, 1896, upon the verdict of a
jury convicting the defendant of the crime of grand larceny in the
first degree, and also from an order entered in said clerk's office

denying the defendant's motion for a new trial, with notice of an intention to bring up for review upon such appeal an order entered in said clerk's office on the 18th day of December, 1895, overruling the defendant's demurrer to the indictment.

The indictment charged Albert P. Wicks, the appellant, and Frank J. Stinson with the crime of grand larceny in the first degree. It alleged that on or about the 15th of September, 1895, they and other persons conspired, connived and confederated together to cheat and defraud Frances E. Stewart, of the town of Manchester, Ontario county, of her property, and to appropriate the same to their own use; and that they did feloniously, fraudulently and falsely pretend and represent to her that A. P. Wicks was acting for said Frances E. Stewart as real estate broker and commission agent in the selling of her said property, which consisted of a house and lot worth $1,500, which was then owned by her and situate in the town of Manchester, "and that the said Frank J. Stinson desired to buy said property and move to the village of Shortsville, upon said property to live, and in pursuance of the conspiracy aforesaid, and of said felonious, fraudulent and false pretenses and representations, the said Frank J. Stinson then and there agreed to purchase and buy the said lands and premises for the sum of nineteen hundred ($1,900) dollars cash, to be paid upon the delivery of the deed of said premises with the abstract of title thereof; and in pursuance of their said scheme and their conspiring, conniving and confederating together as aforesaid, the said Albert P. Wicks and Frank J. Stinson and other persons to the grand jury unknown, pretended and represented to the said Frances E. Stewart that it would be necessary for her or some one in her behalf to come to the city of Rochester with her deed and abstract of title when properly prepared to consummate said purchase, and that the cash price of nineteen hundred ($1,900) dollars would be paid and delivered to the said Frances E. Stewart or her representative, at the city of Rochester, N. Y., upon the presentation and delivery of said deed and abstract of title of the said premises."

The indictment also alleged that on the 17th day of October, 1895, at the town of Manchester, Frances E. Stewart "made and executed her warranty deed of said lands and premises * * * and on the 19th day of October, 1895, delivered the said deed and

abstract of title to her said husband, Samuel A. Stewart, to be taken by him to Rochester, aforesaid, and delivered to the said Frank J. Stinson upon the payment by him to said Samuel A. Stewart of the sum of nineteen hundred ($1,900) dollars in cash as aforesaid; and at the city of Rochester, aforesaid, in pursuance of the conspiring, conniving and confederating together of the said Albert P. Wicks and Frank J. Stinson, and other persons to grand jury unknown, and of their felonious intention to deprive and defraud the said Frances E. Stewart of the property heretoforein* mentioned, and of the use and benefit thereof, and to appropriate the same to their own use, did then and there feloniously, fraudulently and falsely pretend and represent to the said Samuel A. Stewart that the said Frank J. Stinson was the owner of a certain mortgage made and executed by one Thomas E. Payson and wife to the said Frank J. Stinson, to secure the payment of the sum of two thousand ($2,000) dollars, and that the said mortgage was a first lien on a house and lot in Rochester, N. Y., aforesaid, and that the said house and lot described in said mortgage and encumbered there* was very valuable, and was worth more than the amount of the mortgage, and that the said mortgage was a good first-class mortgage, and of the value of two thousand ($2,000) dollars, and the said Frank J. Stinson was perfectly good and responsible, and would pay the said sum of nineteen hundred ($1,900) dollars and redeem said mortgage, and that the said Samuel A. Stewart, then and there believing said false and fraudulent representations so made as aforesaid by the said Albert P. Wicks and Frank J. Stinson, and being deceived thereby, was induced, by reason of the false, fraudulent pretensions and representations so made as aforesaid, to allow the said Albert P. Wicks to take the said mortgage and take and accept an assignment of the same and to deliver, and did then and there deliver, to the said Frank J. Stinson and Albert P. Wicks, the abstract of title of the premises hereintofore* described, together with the said deed executed and made by Frances E. Stewart to the said Frank J. Stinson of the said premises hereintofore* described, and the said Albert P. Wicks and Frank J. Stinson did then and there feloniously and fraudulently obtain the abstract of title and the said deed of the proper goods, chattels and property of the said Frances E. Stewart, by cover

* *Sic.*

and aid of the false pretenses and representations aforesaid, and with the intent to deprive and defraud the said Frances E. Stewart of the same and the use and benefit thereof, and appropriate the same to their own use."

The indictment also alleges the falsity of the foregoing representations.

The appellant demurred to the indictment on the ground that the crime or crimes were " not committed, nor was any part thereof in the county of Ontario nor within the jurisdiction of this court," and upon several other grounds mentioned in the demurrer. The demurrer was overruled, and the appellant was directed to appear and plead to the charges, which he did, and thereafter a trial was had and a verdict of guilty rendered by a jury, and a sentence was imposed upon the appellant that he be imprisoned in the State prison at Auburn for the term of six years, and judgment enforcing the verdict and sentence was entered, from which the appeal is taken.

*P. Chamberlain,* for the appellant.

*Royal R. Scott, District Attorney,* for the respondent.

HARDIN, P. J.:

In behalf of the appellant it is contended that the indictment on its face shows that the crime charged was not committed within the county of Ontario, and, therefore, that the grand jury had no legal authority to inquire into the crime, because it is claimed that the crime, if committed at all, was within the county of Monroe. However, an inspection of the indictment reveals the language thereof, which alleges that at the town of Manchester a conspiracy and confederation was formed to cheat Frances E. Stewart of her property, and that the accused did " then and there feloniously, fraudulently and falsely pretend and represent to the said Frances E. Stewart that the said A. P. Wicks was acting for said Frances E. Stewart as real estate broker and commission agent in the selling of her said property."

From the evidence it is very apparent that the representations made in a negotiation had between the complainant and the appellant took place in the town of Manchester, Ontario county.

Undoubtedly an indictment must show that the court in which it

is found has jurisdiction of the offense. (*People* v. *Horton,* 62 Hun, 610.)

If we consider the crime as it is alleged in the indictment, or as it is disclosed by the evidence in the case, we are warranted in saying that it was committed partly in the county of Ontario and partly in the county of Monroe, and the case, therefore, falls within the provisions of section 134 of the Code of Criminal Procedure. That section provides that if the crime "or the acts or effects thereof * * * occur in two or more counties, the jurisdiction is in either county."

We think that, within the cases that have been decided under that section, it was properly held that the objection to the jurisdiction was not well taken. (*People* v. *Crotty,* 30 N. Y. St. Repr. 44; *People* v. *Dimick,* 107 N. Y. 15.) The validity of such statute seems to be approved by the principle laid down in *Mack* v. *The People* (82 N. Y. 235).

(2) It is contended by the appellant that the indictment charges separate crimes — *first,* a conspiracy, and, *second,* grand larceny. We cannot assent to such contention. The indictment undoubtedly contains more allegations than were necessary to present a question of grand larceny. However, the allegations in respect to conspiracy, though perhaps not necessary, tended to apprise the defendant more fully of the proofs that he might be required to meet on traverse of the indictment.

In *People* v. *Everest* (51 Hun, 26) it was said: "It is never necessary for the People to prove all the allegations in the indictment if those which are supported by the evidence constitute the crime charged therein."

In *Bork* v. *The People* (91 N. Y. 13) it was said: "It was not necessary to prove that the defendant did all the specific acts charged in the indictment, to justify a conviction. It was sufficient to prove that he did any one of the acts constituting the offense. Where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together, and charge the defendant to have committed them all, and a conviction may be had on proof of the commission of any one of the things, without proof of the commission of the others." (Citing *People* v. *Davis,* 56 N. Y. 95.)

The evidence reveals to us that some of the false representations were made, and some of the steps leading up to the full consummation of the crime were taken, in Ontario county, and it is quite manifest that had not such representations and steps been taken in the town of Manchester, the crime as finally consummated would not have been committed. The initiation of the scheme, as shown by the evidence to have been in Ontario county, was by means of representations which moved the complainant to the execution of the deed and to the obtaining of the search, and secured her confidence, which led her to cause to be executed her deed and to intrust the same to her husband, as her agent, to consummate the agreement which had been brought into existence by means of such false and fraudulent representations. The evidence very clearly indicates that the appellant in effect assured Mrs. Stewart that he was in good faith acting as a broker and aid in procuring a purchaser for her of her property, and that in furtherance of that assurance he introduced to her Frank J. Stinson and gave her to understand that Stinson in good faith desired to buy her property and move to Shortsville. The evidence also warranted the jury in finding that such representations were not true, and that Stinson was not a prospective purchaser, and that he was taken to Mrs. Stewart by the defendant under a fictitious name, and that the relations existing between Wicks, the appellant, and Stinson were not as represented at the time the interview took place with Mrs. Stewart. Subsequent representations were made by the appellant and Stinson to the husband of the complainant in the city of Rochester, which, upon the evidence, the jury were warranted in finding were false and delusive. The mortgage which was offered as a substitute for the $1,900 in cash seems to have been made with the connivance of the appellant and Peckens for the purpose of being used to turn over to the complainant. It was made in the name of Frank J. Stinson, whose real name was Frank Johnson, and the evidence warranted the jury in finding that the mortgage was the property of Wicks and Peckens, and also in finding that Wicks, the appellant, instead of acting for the complainant, was himself an interested party to consummate the scheme of substituting the mortgage for the $1,900 cash that had been promised to the complainant. We think the allegations of the indictment were sufficiently clear and

explicit to charge the crime of grand larceny in the first degree, and that the same was committed by the aid of false pretenses and fraudulent representations; and that the evidence of the conspiracy might have been received to establish the crime, if the indictment had not contained all the specific allegations relating to the conspiracy. (*People* v. *McKane,* 143 N. Y. 455.) That same case seems to be an authority for saying that, where there is a conspiracy to commit a crime, and the crime committed is a felony, the conspiracy merges in the felony so as to prevent a prosecution for the conspiracy itself. (See *People* v. *McKane,* 57 N. Y. St. Repr. 723; *People ex rel. Gaynor* v. *McKane,* 78 Hun, 154.)

It is apparent that, for the reason that the indictment contained more specific and elaborate statement of the facts than was necessary, the appellant could not successfully demur thereto upon the ground that it charges more than one crime. Nor can we yield to the contention of the appellant that the representations alleged in the indictment, and established by the evidence, were mere expressions of opinion.

In *People* v. *Dimick* (107 N. Y. 30) it was said, viz.: "Whether the representations alleged in the indictment were such as were calculated or capable to deceive was a question of fact for the jury. It could not be ruled as matter of law upon the face of the indictment that the representations could not and ought not to have deceived any one."

Appellant calls our attention to *People* v. *Blanchard* (90 N. Y. 314). That case is an authority for saying that under an indictment charging the "obtaining goods by means of false representations, it is not necessary that the prosecution should prove all the false representations alleged in the indictment. Where representations set forth in the indictment are proved, the sense in which they were used, and what was designed to be, and was, understood from them, are questions for the jury."

That case is also an authority for saying that "false pretenses may not be founded upon an assertion of an existing intention, although it did not in fact exist; there must be a false representation as to an existing fact." We fail to see how that case aids the contention of the appellant, as the trial court properly submitted to the jury to determine what representations were made and what was the inten-

tion of the party at the time of making them, and whether they were, in fact, true or false; and it must be assumed that the jury have properly found upon the evidence that the misrepresentations were made for the purpose of deceiving, and that the complainant was deceived by the representations which the jury were warranted in finding were false. The representation in that case, which was held to be insufficient, related not to an existing fact, but to one yet to arise, and the party was deceived, "not by a false pretense, but by a broken and fraudulent promise." The case differs very essentially from the case in hand.

It has been repeatedly held that it is enough to state in an indictment a pretense which is capable of deceiving the complainant, and that it is for the jury to determine the materiality of the statement and the influence that it had upon the complainant. (*Thomas* v. *The People*, 34 N. Y. 351; *Smith* v. *The People*, 47 id. 303; *White* v. *Loudon*, 90 Hun, 218.)

(3) We are of the opinion that the court did not err in denying defendant's motion to dismiss the indictment or in refusing to direct an acquittal of the defendant upon his motion made in that regard. On the contrary, we think that the evidence produced at the trial abundantly established the crime charged in the indictment.

(4) After the trial judge had delivered an extensive charge to the jury, in which he submitted to them in a very liberal manner the opportunity to find upon all the evidence whether the defendant was guilty or innocent, he was requested to charge, viz.: "Upon the evidence in this case, no evidence of what transpired in Shortsville cannot* be received or acted upon by the jury in arriving at a verdict of guilty or not guilty."

He declined to so charge and the defendant took an exception, and now urges upon us that the refusal to charge was error. We think otherwise. We have probably sufficiently expressed our views upon the subject of what transpired at Shortsville to indicate that the trial judge made no mistake with reference to those acts and representations in allowing the jury to determine what was the intent of the defendant when beginning the transaction which culminated in the crime charged.

Again, the defendant requested the court to charge, viz.: "That

                  * *Sic.*

in order to convict the defendant the jury must find from the evidence that at the time of the transaction at Rochester with Samuel Stewart, on the 19th day of September, 1895, the defendant did something more than to express an opinion of the value of the Saratoga avenue property, or his ability to secure the loan of $2,000." In dealing with that request the court said : " I decline so to charge, but state the jury is to find the transactions at Rochester as given from the evidence, and if that is a part of the transaction as charged in the indictment they are to consider it in rendering a verdict." The defendant took an exception. We fail to see any error presented by the exception.

Again, the appellant's counsel requested the court to charge : " That the said Stewart was negligent in either not inspecting the property or ascertaining its value, or the amount of the encumbrances, he having an opportunity so to do, and* he was not prevented from so doing by artifice the defendant cannot be convicted of larceny." The court declined to so charge and an exception was taken. Considering the body of the charge delivered by the trial judge, we think no error was committed in refusing the specific request made.

The court did charge that the statement made by the defendant to Stewart at the city of Rochester on the 19th day of October, 1895, in the following words : " I consider that a first-class mortgage," must be considered by the jury as an expression of opinion only and not as an existing fact — which undoubtedly is quite as favorable as the defendant was entitled to receive. Thereupon he asked the court to charge : " That being the law, it must be considered by them as an expression of opinion only, and that they must acquit this defendant." In response to that request the court refused and an exception was taken. We think no error was presented by the exception. It was not within the proper province of the court to instruct the jury to acquit, although they considered the expression used, which has just been quoted, as a mere expression of opinion.

The appellant requested the court to charge : " That the allegation in the indictment, that the defendant represented to Stewart that the said mortgage was a first lien on a certain house and lot in the city of Rochester, and that the house and lot was very valuable and was

---

\* *Sic.*

worth more than the amount of said mortgage, is disproved by the testimony of Stewart." In response thereto the court said : " I leave that as a question of fact for the jury to determine." Thereupon an exception was taken. Stewart testified that Wicks motioned him to go outside of the room, and that he did so, and that then Wicks advised him that it would be better to take the mortgage. And the witness added : " He said that it was better than money ; he said that in case that Mr. Stinson didn't redeem it he would have to forfeit that extra $100. So I acted on his advice. * * * He said he was well acquainted with the property and every building on it ; it was worth at least $3,000."

Robert Stewart was called as a witness, and he testified to having a conversation with Wicks on the twenty-third of October, and the witness said : " I asked him about the mortgage and he said it was a first mortgage. I asked him if it was a first mortgage or a first-class mortgage ; he said it was a first mortgage."

He was cross-examined upon the subject, and to some extent qualified his evidence given in chief. We are of the opinion that when the court responded to the request made by saying, " I leave that as a question of fact for the jury to determine," no error was committed.

(5) During the charge the court instructed the jury that it was necessary and incumbent upon them " to say before this defendant can be convicted of the crime which is charged here, you must find it was done with an intent to defraud, or in other words the meaning of ' intent ' is a question of fact for you to determine. If you find this was done with this intent, and in the way and manner as charged and claimed by the prosecution, and as I have stated here, then you are to find a verdict of guilty. But if you find this transaction was not done with an intent to so deprive or defraud the Stewarts in the way which is claimed by the defense, and as stated by them, then you are to find a verdict of not guilty. So the question of ' intent ' becomes a prime factor in coming to a conclusion on the evidence in regard to the Stewart transaction, and is the only question which you are to determine."

That language was followed by an explicit instruction in words as follows : " The evidence in regard to the other transactions, the transactions with Mrs. Elliott, Mrs. Thompson, Mr. Brown, Captain

Kitts and several other transactions, are only competent evidence as showing the intent of the parties in the transaction which you are to determine, or, in other words, the evidence received of those other transactions are only competent evidence as to the intent of the Stewart transaction, and from which the same motive may be imputed to all the transactions as was shown, including the Stewart transaction. Now, in considering these other transactions, they are to have no weight upon you, or upon your verdict, excepting if you find that this transaction was done in the same general way that the other transactions were, then it is competent for you to find from that the fact as to the intent of the party in the Stewart transactions."

A large volume of evidence was received upon the trial tending to connect the persons named in the indictment with Peckens and others in several transactions relating to real estate prior to the transaction in question. In receiving some of that evidence the court assumed that a confederation was shown between the defendant and Peckens and some other persons named, and overruled objections which were made to the statements, declarations and acts of some of the parties.

In *People* v. *Bassford* (3 N. Y. Crim. Rep. 220) it was held that "to show common interest and purpose of defendant and other persons indicted with him it is competent to prove participation of defendant upon other occasions with these persons in the business in which the crime was committed. Whenever common purpose or conspiracy by the defendants is shown, then acts and declarations of any one of them relating to the alleged offense, though in the absence of the others, is admissible, and the acts of one in the same common purpose becomes those of all."

In the course of the opinion delivered in *Kelley* v. *The People* (55 N. Y. 575) ALLEN, J., said: "There was abundant evidence to justify the conclusion that the parties were all acting with a common purpose and a common design, and although there may have been no previous combination or confederacy to commit this particular offense, the conduct and actions of the several parties, and the parts they severally performed in the actual perpetration of the crime, was sufficient to make the acts and declarations of each, from the commencement to the consummation of the offense, evidence against the others."

In *The People* v. *McKane* (143 N. Y. 470) it was said : " When a conspiracy is shown, or evidence on the subject given sufficient for the jury, then the acts and declarations of the conspirators, in furtherance of its purpose and object, are competent, and in a case like this it is not necessary, in order to make such proof competent, that the conspiracy should be charged in the indictment."

Considerable of the evidence offered by the People, to which numerous exceptions were taken within the rules already alluded to, we deem proper, and properly received upon the question of the intent of the defendant . in the transaction mentioned in the indictment.

The trial judge very clearly limited the evidence of other transactions to the question of the intent of the defendant in the transaction under consideration.

In *People* v. *Dimick* (107 N. Y. 32) it was said : " The proof as to the other crimes may have been inconclusive, but the People had the right to give it and have it submitted to the jury with proper instructions for their consideration."

The case in hand seems to appropriately call for the application of the rule laid down in the case of *The People* v. *Dimick* (*supra*). Near the close of the opinion in that case it was said of the exceptions to rulings upon the evidence, viz. : " They are so numerous that it is wholly impracticable to give them particular attention here. We have carefully examined and considered them all and do not believe that any of them point out any error prejudicial to the defendant. He appears to have had a fair trial, and the verdict of the jury seems to be abundantly sustained by the evidence. Section 542 of the Code of Criminal Procedure provides that ' after hearing the appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties,' and section 684 provides that ' neither a departure from the form or mode prescribed by this Code in respect to any pleadings or proceedings, nor any error or mistake therein renders it invalid, unless it has actually prejudiced the defendant, or tends to ·his prejudice, in respect to a substantial right.' These are mandates of the law-making power, and the courts should, with reason and discretion, give them full force and effect. Giving them the observance due in this case, we find no

exception in the record showing that the defendant has been prejudiced in respect to any substantial right."

If the foregoing views are approved, the conviction, judgment and orders appealed from should be affirmed and the judgment entered in accordance with sections 547 and 548 of the Code of Criminal Procedure.

All concurred.

Conviction, judgment and orders affirmed and judgment to be entered, certified and remitted pursuant to sections 547 and 548 of the Code of Criminal Procedure.