## Court of Appeals.

October 2, 1900.

## THE PEOPLE v. JOHN C. LAMMERTS.

### (164 N. Y. 137.)

1. JURORS—DRAWING EXTRA PANEL—CODE CIV. PRO., § 1174.
    Section 1174, of the Code of Civil Procedure, requiring the sheriff to notify the requisite number of persons to attend as talesmen, and to make return as prescribed in section 1048, applies to the form and manner of the return, and not to the time, as the latter section requires return to be filed at or before the opening of the term; and in case the return was actually filed before the court overruled the challenge to

the array and before any juror had been selected and sworn to sit upon the trial, it was in time.

2. SAME—CHALLENGES.

Defendant is not harmed where the court overrules his challenges for bias of certain jurors, if they are subsequently excused under his peremptory challenges, which are not exhausted in securing a full panel for the trial of the case.

3. INDICTMENT—LARCENY.

The allegations that defendant had in his possession " two thousand five hundred forty-nine dollars of complainant's goods, chattels and personal property, of the worth and value of that sum " is not defective in that it does not state that the amount was " in money."

4. SAME.

An indictment which alleges that a county treasurer had a certain amount in his possession, and further charges that he " did then and there, with intent to deprive the true owner of said property, and of the use and benefit thereof, and to appropriate to himself * * * wilfully, unlawfully and feloniously appropriate, secrete, withhold, take, steal and carry away " is capable of but one construction, that he did appropriate the money to himself, and sufficiently states a crime as defined by the statute.

5. SAME—VARIANCE BETWEEN PROOF AND CRIME CHARGED.

The money of the county had been deposited in the bank subject to the order and control of the county treasurer. He drew the check upon the bank as such treasurer, and it was paid to L, in satisfaction of a judgment he had obtained against defendant. *Held* that the money was converted and appropriated to the use of the defendant.

APPEAL from a judgment of the appellate division of the supreme court in the fourth judicial department, entered May 5, 1900, affirming a judgment of the Niagara county court convicting the defendant of the crime of grand larceny in the first degree, and an order denying a motion for a new trial.

The facts, so far as material, are stated in the opinion.

Daniel E. Brong, for appellant.

Abner T. Hopkins, for respondent.

HAIGHT, J.—The indictment charged the defendant with the crime of grand larceny in the first degree, committed as follows: " The said John C. Lammerts, on or about the 13th day of April, 1898, at the city of Niagara Falls, within the county of Niagara, was then and there and at the time of the commission of the act and acts heretofore mentioned, was a public officer, to wit: County Treasurer of the county of Niagara, and as such public officer had then and there in his possession, custody and control, two thousand five hundred forty-nine dollars and fifty cents, of the goods, chattels and personal property of the county of Niagara, of the worth and value of two thousand five hundred forty-nine dollars and fifty cents, but of what particular kind, character or denomination are to this Grand Jury unknown, and cannot by them, with reasonable diligence, be ascertained, and for that reason cannot be given, *did then and there* with intent to deprive, and defraud the true owner of said property and of the use and benefit thereof, and to *appropriate to himself,* the said John C. Lammerts, and of other person or persons to this Grand Jury unknown and cannot with reasonable diligence be ascertained, and for that reason cannot be given, *wilfully, unlawfully,* and feloniously *appropriate,* secrete, withhold, take, steal and carry away, contrary to the form of the statute in such case made and provided, and against the peace of the people of the State of New York and their dignity." The case was tried in the county court of Niagara county. The evidence tended to show that the defendant was the treasurer of Niagara county, and as such, had on deposit with the Power City Bank of Niagara Falls moneys belonging to the county; that on the 13th day of April, 1898, he drew his check as such treasurer on the bank for $2,549.50, being a portion of the moneys of the county which he had on deposit and personally took the same to the bank and procured therefrom a draft on New York for that amount payable to F. L. Lovelace, attorney. This draft the defendant delivered to Lovelace in satisfaction of a judgment which had been obtained against the defendant

personally for that amount. The draft was subsequently paid by the bank, and the defendant's account, as treasurer, was charged with the amount of the check.

After the case was moved for trial the defendant's counsel interposed a challenge to the array of the extra panel of jurors drawn, upon the ground that no return had been made by the officer summoning the extra panel. It appears that the case was moved for trial on the 20th of October, and at that time the court ordered an extra panel of one hundred jurors drawn and summoned by the sheriff to attend the court on the 30th day of October, to which day the trial was adjourned. The jury box was brought into court and the names of one hundred jurors were publicly drawn therefrom pursuant to section 1058 of the Code of Civil Procedure. On the morning of the 30th, at the opening of the court, the names of the jurors drawn for the extra panel were called and those appearing answered to their names, but for some reason the sheriff did not file his return showing the manner in which each juror had been notified until some time in the afternoon of that day. Section 1048 of the Code of Civil Procedure provides that the sheriff must file the list of jurors " with the Clerk of the Court, at or before the opening of the term; with a return, endorsed thereupon, or annexed thereto, under his hand, naming each person notified, and specifying the manner in which he was notified." This section of the Code has reference to the regular panel of jurors drawn in advance of the time at which the court is appointed to be held. The extra panel of jurors in this case was drawn after the term of court had commenced, and, consequently, the return of the sheriff could not be filed at or before the opening of the term. Section 1171 of the Code makes provision for the procuring of talesmen in case a sufficient number of jurors do not appear to fill up a jury. Section 1174 requires the sheriff to notify the requisite number of such persons to attend forthwith and to make return thereof as prescribed in section 1048; but, obviously, this could not require the return to be made at or before the open-

ing of a term of court. The provision must, therefore, be construed as applying to the form and manner of the return and not to the time. In this case the return was actually filed before the court overruled the challenge to the array, and before any juror had been selected and sworn to sit upon the trial. We think the challenge was properly overruled.

Complaint has been made with reference to the court's overruling the challenges by the defendant for bias of the jurors Hubbs, Silsby and Peterson. Each of these jurors were subsequently excused under the peremptory challenge of the defendant. He did not exhaust his peremptory challenges in securing a full panel for the trial of the case. He, therefore, suffered no harm by the rulings of the court. People v. Scott, 153 N. Y. 40, 49; People v. Larubia, 140 N. Y. 87; People v. Decker, 157 N. Y. 186, 192.

We are thus brought to a consideration of the main questions in the case, and that is whether the indictment alleges a crime, and as to whether there was a variance between the proofs and the crime charged.

It must be conceded that the indictment in this case was carelessly drawn, and that the questions raised by the demurrer interposed thereto are not free from difficulty.

Section 528 of the Penal Code defines the crime of larceny, as attempted to be charged in the indictment, as follows: " A person who, with the intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person, either * * * 2. Having in his possession, custody, or control * * * as public officer * * * any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, appropriates the same to his own use, or that of any other person other than the true owner or person entitled to the benefit thereof; steals such property, and is guilty of larceny." The indictment, as we have seen, charges the defendant with having committed the crime of grand larceny in the first degree on the 13th day of

April, 1898, at the city of Niagara Falls, within the county of Niagara; it charges that he was the county treasurer of that county, and as such public officer had in his possession, custody and control two thousand five hundred and forty-nine dollars and fifty cents of the goods, chattels and personal property of the county of the worth and value of that sum. It does not allege that the two thousand five hundred and forty-nine dollars and fifty cents was in money as it should have done, but rests the charge with a statement of the number of dollars and cents. We, however, are inclined to the view that this imperfection in the matter of form did not tend to prejudice the substantial rights of the defendant. Dollars and cents have a well-recognized meaning as commonly used. The common definition is, the unit of *money* by which values of commodities are measured. It is thus apparent that the defendant must have understood that he was charged with having in his possession, custody and control, money of the amount and value specified. The indictment further proceeds to charge that he " did then and there with intent to deprive the true owner of said property, and of the use and benefit thereof, and to appropriate *to himself* * * * wilfully, unlawfully and feloniously appropriate, secrete, withhold, take, steal and carry away." It is contended that there is no allegation that the defendant did, in fact, appropriate the money to the use of himself or of another person and for that reason it does not state a crime as defined by the statute. It does, however, appear that the appropriation was made with the intent to deprive and defraud the true owner of the property and that he intended to appropriate it to himself; but it is said that the intent to appropriate it to himself does not amount to a charge that he did appropriate it to himself. A distinction may exist between the two expressions, but it is rather fine. If he did appropriate, and at the time of appropriating intended to appropriate to himself, it is a little difficult to see why it did not amount to an appropriation to himself; but however this may be, we are of the opinion that the charge is capable of but one con-

struction, and that is that he did appropriate the money to himself. As we have seen, the appropriation was made with the intent to appropriate to himself and to deprive and defraud the true owner of the property. It is charged that the appropriation was feloniously, the meaning of which is that it was appropriated with the intent to commit a crime. It is further charged that he did withhold and steal. Steal, as defined by Webster, means to take without right, with intent to keep. Withhold means to retain, to keep back. Appropriate is defined as " taking from another to one's self with or without violence; to take to one's self to the exclusion of others." 2 American Encyclopædia of Law (2d ed.), 516. The appropriating of the money with the intent to deprive the owner thereof and to commit a crime, and the retaining and the keeping of it after the appropriation, in effect, is an appropriation to one's self. Rapalje on Larceny, 502; 1 McClain on Criminal Law, § 655; People v. Dimick, 107 N. Y. 13. The indictment must contain a plain and concise statement of the act constituting the crime without unnecessary repetition. It is sufficient if the act charged as the crime is stated with such a degree of certainty as to enable the court to pronounce judgment upon the conviction according to the rights of the case. It is not insufficient by reason of any imperfection in matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits. Code Criminal Procedure, §§ 275, 284, 285. We, consequently, are of the opinion that the order overruling the demurrer should be sustained.

Was there a variance between the proof and the crime charged? It is contended that the evidence showed that the draft on New York, payable to Lovelace, which the defendant procured from the bank, was the property appropriated, and that such an appropriation was not charged in the indictment. We think this contention cannot be sustained. The money of the county had been deposited in the bank subject to the order and control of the county treasurer. He drew the check upon the bank as such treasurer and his check was paid. The

transaction was, in effect, the same as if the cashier of the bank had paid the money over personally to him upon the check and then he had taken and passed it back to the cashier in payment for the draft. The draft, as we have seen, was made payable to Lovelace and was intended to be, and was, subsequently, delivered to him in satisfaction of a judgment which he had obtained against the defendant. It is true the defendant waived the physical handing to him of the money, but the legal effect of the transaction was not changed by such waiver. The instant the money was paid over upon the check it became the county's money, and when the money was used in the purchase of a draft on New York to the order of Lovelace, the money was converted and appropriated to the use of the defendant. People v. Dimick, 107 N. Y. 13, 32; People v. Reavey, 38 Hun, 418; affirmed, 104 N. Y. 683.

We have examined the other exceptions taken upon the trial referred to by the appellant, but find none which requires a new trial.

The judgment should be affirmed.

PARKER, Ch. J., O'BRIEN, BARTLETT, VANN, LANDON and CULLEN, JJ., concur.

Judgment affirmed.