WESCOTT and another *v.* WAYNE AGRICULTURAL WORKS and others.

*(Circuit Court, D. Indiana.* February 14, 1882.

PATENTS—JOINT INTEREST—TITLE.

    Where a party holding the title to patents absolutely conveys them to others jointly as trustees, with full power to dispose of them at their discretion to enable them to take upon themselves the entire and exclusive management of the business, they can exercise the power only jointly, and a contract by one of the parties conveys no title.

*H. C. Fox* and *Wood & Boyd*, for plaintiffs.

*Hill & Dixon*, for defendants.

GRESHAM, D. J. The following agreement was entered into on the sixth day of October, 1874, between the plaintiffs and Hiram Moore:

"Whereas, sundry letters patent of the United States heretofore have been granted to said Moore, which letters patent are respectfully numbered, entitled, and dated as follows, to-wit: No. 30,685, dated November 20, 1860,

and entitled 'improvement in seed drills,' and No. 31,819, dated March 26, 1861, and entitled 'improvement in seed drills;' and whereas, the said Moore is justly indebted to the said Charles W. West in the sum of $10,000 for money advanced to aid him, the said Moore, in perfecting his inventions, and is desirous of securing the repayment of the same; and whereas, the said Wescott is desirous of securing an interest in the inventions and letters patent aforesaid, and in any reissue, renewal, or extension thereof; now, therefore,

"Know all men by these presents, that for and in consideration of the premises, and of the sum of five dollars, in lawful money, to me in hand, by the said Wescott and West, before the execution hereof, paid, and of other valuable considerations, me thereunto moving, I, the said Hiram Moore, do hereby assign, sell, and set over, unto the said Charles W. West and John M. Wescott, the entire right, title, and interest in and to the letters patent aforesaid, and in and to the inventions and improvements represented, shown, or described therein, including any renewal, reissue, or extension thereof, the same to be held and enjoyed by the said West and Wescott, and their legal representatives, as fully and entirely as the same would have been held and enjoyed by me had this assignment and sale not been made, to the full end of any term or terms for which the letters patent aforesaid, or either of them, have been, or hereafter may be, granted, reissued, renewed, or extended.

"I hereby further agree to sign such lawful papers and do such lawful acts as may, by the counsel, learned in law, of the said West and Wescott, be deemed necessary or expedient in order to obtain an extension or reissue of the patents aforesaid, or to assert, maintain, or defeat the rights secured by said letters patent. It is expressly understood, however, that the costs and charges of the proceedings aforesaid shall be defrayed by said West and Wescott, as hereinafter provided.

"In consideration of the premises I hereby further make, constitute, and appoint the said Charles W. West and John M. Wescott my true and lawful attorneys in law and in fact, with power irrevocable, giving and granting to them full and exclusive and unreserved power and authority for me, and in my name, place, and stead, to assume and take upon themselves the entire and exclusive management and control of the aforesesaid letters patent, and of each and every of them, and to dispose of all the right, title, and interest which I have under the same, and under each and every of them, for such price or prices, upon such terms, and to such persons, and for such place or places as they, my said attorneys, shall deem proper, and in my name, place, and stead, and as my own proper act and deed, to sign, seal, deliver, and acknowledge all such deeds and instruments of writing as shall be necessary or proper for the granting or licensing to others the said rights under the said letters patent, and to each and every of them, and to ask, demand, sue for, and receive the price or fees, or any part or parts thereof, paid or payable for such grants or licenses, and in my name to execute and deliver receipts and acquittances therefor, and in my name to bring to account and reckoning, and to ask, demand, sue for, and recover and receive of and from all and any person whomsoever who may have been or may be manufacturing or selling said drills containing the improvements aforeasaid, or by any or either of them, such reasonable price or fee for such use of said improvements, or either of them, as

my said attorneys shall deem proper and reasonable; and on receipt or recovery thereof, or of any part or parts thereof, to execute in my name such good and sufficient receipts, releases, and discharges for the same as my attorneys shall deem proper, and to liquidate and discharge the same; and on the neglect or refusal of any such manufacturer or manufacturers as aforesaid lawfully to account for the use of said improvements, or of any or either of them, and to pay such reasonable price or fee for such use, and to agree to pay a reasonable royalty therefor or for the right to continue the use of said improvements, or of any or either of them, to take all such legal ways and means for securing and enforcing the payment thereof, or to stop the unauthorized use of such improvements, or of any or either of them, by action, suit, or otherwise, as they, my said attorneys, may deem expedient, and in my name to prosecute, as they may deem expedient, all or any actions or suits, at law or in equity, or other proceedings before any tribunal, against any person or persons, brought by or under my said attorneys, and thereon to proceed to judgment or to discontinue, or to compromise the same, as they, my said attorneys, shall deem expedient, hereby authorizing and empowering my said attorneys to substitute and appoint under themselves one or more special attorneys to do or perform any act, matter, or thing which they themselves might lawfully do by virtue hereof, and generally to do and perform and execute in my name as aforesaid all and whatever other acts, matters, and things that they may deem expedient and requisite, or may be advised to do in and about the premises, as fully and effectually, to all intents and purposes, as if I myself were present and did the same; I, the said Hiram Moore, hereby ratifying, allowing, and confirming and agreeing from time to time, and all times hereafter, to ratify, allow, and confirm as good and valid all and whatsoever the acts, matters, and things which my said attorneys, or their substitutes, shall lawfully do or cause to be done in and about the premises by virtue of these presents; and I, the said Hiram Moore, hereby consent and agree with the said West and Wescott to do no act or thing to diminish the powers herein conferred upon them, or to hinder or embarrass them in the execution of this power, which is hereby intended and declared to be irrevocable. I hereby revoke, annul, and disallow any and all powers of attorney heretofore given by me in this behalf.

"It is hereby agreed by the parties hereto, that this agreement is to supersede and take the place of any heretofore made between said Moore and J. M. Wescott, aforesaid; and that the entire right, title, and interest in the letters patent aforesaid has been, up to the execution of these instruments, vested in the said Hiram Moore.

"The said John M. Wescott, for his part, agrees, at his own cost and charges, to procure the extension of said letters patent, November 20, 1860, now pending, if practicable, including the expenses already incurred, as well as those which hereafter may be incurred, in said behalf, which sum is to be paid absolutely, whether said extension is granted or not, and in no event is any part of said sum to be reclaimed from, or refunded, or repaid by, said Moore, or to be deducted from the sum or sums collected under said patents.

"It is hereby covenanted and agreed by and between the parties hereto as follows: That from the sum or sums collected under the letters patent aforesaid, from sales, royalties, or settlements, or from any other source, shall first

be deducted the costs, charges, and expenses of collecting the same, including all litigation expenses, save those of the extension application, and then the net profits or proceeds shall be divided as follows: To Hiram Moore, or his legal representatives, one-fourth part; to C. W. West, or his legal representatives, one-fourth part; to John M. Wescott, or his legal representatives, one-half part. In case of loss or failure to realize any profit under said patents, all litigation expenses aforesaid are to be paid by said Wescott; it being expressly understood by the parties hereto that under no circumstances are said Moore or West to incur any obligation, or to be under any liabilities, for said expenses. It is further agreed that John M. Wescott is to make no charge for his own time spent in this behalf, nor is said West to make any charge for his services.

"It is also expressly understood that said Moore's interest is to continue during and throughout the extended time of the patent of November 20, 1860. Should such extension be granted, the parties hereto hereby agree in good faith to perform the covenants between them made.

"In testimony whereof the parties hereto have affixed their hands and seals the day and year first above written.

"HIRAM MOORE.  [Seal.]
"C. W. WEST.  [Seal.]
"J. M. WESCOTT.  [Seal.]

"In presence of—
"WM. D. BALDWIN,
"MARY T. PALMER."

On the tenth day of November, 1874, John M. Wescott entered into an agreement with Isaac Kinsey and Aaron Morris. This agreement, after reciting that by the terms of the contract of October 6, 1874, Hiram Moore conveyed to West one-fourth interest in the patent, and to Wescott one-half interest, and retained to himself one-fourth interest, proceeds as follows:

"And whereas, in consideration of the foregoing, Isaac Kinsey and Aaron Morris, of Milton, in Wayne county, Indiana, are desirous of obtaining an interest in said letters patent, they hereby agree, to and with said John M. Wescott, of the same place, to severally take an equal interest with him in the same:

"Therefore, this article of agreement witnesseth: That said John M. Wescott hereby agrees, to and with said Isaac Kinsey and Aaron Morris, and does hereby set over and assign to each of them one-third part of his one-half interest, retaining one-third part himself in said letters patent; and said Kinsey and Morris, fully understanding the original agreement mentioned, do hereby agree, to and with said Wescott, to be at one-third expense each with said Wescott, jointly, as set forth in said agreement, and shall be equally entitled and receive one-third profit or proceeds, if any, in said one-half interest, and in all things pertaining hereto, to be governed by this and the original contract and agreement."

On the fourth of February, 1879, Isaac Kinsey undertook to assign in writing to Levi L. Lawrence and the Wayne Agricultural Works one-half of the interest he had acquired in the patents, namely, one undivided twelfth part. These instruments were all acknowledged and recorded in the patent-office. The bill charges that the defendants are manufacturing and selling seed-drills covered by the patents, and that they are asserting an interest in the patents as part owners. The prayer is for an injunction and an accounting.

The defendants demur to the bill for want of equity, and because Hiram Moore and Aaron Morris are not made parties. It is urged by counsel for the defendants that the contract of October 6, 1874, made West and Wescott trustees for themselves to the extent of three-fourths of the patents, and trustees of Moore to the extent of the remaining fourth, with powers of attorneys to control and dispose of Moore's equitable interest; that to the extent that they were trustees for their own benefit in the net proceeds, West's and Wescott's legal and equitable estates merged, and that, having thus acquired an assignable interest in the patents, Wescott could and did convey to Kinsey and Morris each one undivided sixth part; and that Kinsey assigned to Lawrence and the Wayne Agricultural Works half of his interest, namely, the undivided twelfth part.

Having carefully studied the contract between Moore and West and Wescott, and given due weight to its different parts, I think it was the intention of the parties to invest West and Wescott with the entire legal title to the patents, jointly, as trustees, with full power to dispose of them at their discretion. This was done to enable them to "take upon themselves the entire and exclusive management" of the business, for the purposes specified. They were to dispose of the patents for the mutual benefit of all the parties, without any hindrance whatever from Moore. In doing this, and in otherwise executing the trust, the trustees were authorized to use Moore's name; but this was not necessary. Moore reserved no power to himself in the management of the business, and the trustees were not bound to consult him in carrying out the trust. He reserved nothing but an interest in the net profits. His power to convey title, grant licenses, collect royalties, and bring suits, ceased with the execution of the contract between him and West and Wescott. But the power that Moore granted to West and Wescott was a joint one—a personal confidence was reposed in their mutual judgment and discretion. They could exercise the power conferred upon them only

as directed. It required the joint deed of both to convey any title to, or interest in, the patents. The contract between Wescott and Kinsey and Morris conveyed no title to the patents to the latter. It may have entitled Kinsey and Morris to share equally with Wescott in one-half of the net profits of the business. It follows, of course, if Kinsey acquired no interest or title to the patents, that he conveyed no title to Lawrence and the Wayne Agricultural Works.

This suit is brought to protect the trust property, and to collect a debt due the trust. If it were a suit to wind up the trust and divide the proceeds among those entitled to them, Moore, and perhaps Morris, would be necessary parties. When a suit is brought to recover a trust fund, with a view to its distribution by the court, all the parties beneficially entitled should be brought before the court. Moore is in all things represented by the trustees, and he will be bound by the judgment of the court in this case. He has no authority to make conveyances, collect royalties, employ counsel, or control litigation. Why, then, make him a party? *Carey* v. *Brown,* 92 U. S. 171; *Kerrison* v. *Stewart,* 93 U. S. 155.

What has already been said disposes of the proposition that by the terms of the contract between Moore and Wescott and West, Wescott took both a legal and equitable estate, which merged, he thereby becoming the absolute owner in his own right of an undivided half of the patents. Moore owned the patents absolutely, and for the purposes of the trust he conveyed his "entire right, title, and interest" to West and Wescott, by a single instrument. It would be a palpable disregard of the intentions of the parties, and the defeat of the trust, to hold that the contract of October 6, 1874, called for the application of the law of merger in favor of Wescott and West.

Demurrer overruled.