FREEMAN v. BAILEY.

1. EVIDENCE—PROBATE JUDGE—PUBLIC GUARDIAN.—Books of account of Probate Judge, as public guardian, and his returns approved by the Circuit Judge and filed in Circuit Court, are competent evidence to show to what estate the funds loaned by him belonged, even if not such records as are constructive notice of that fact.

2. PUBLIC GUARDIAN—NEGOTIABLE INSTRUMENTS.—A public guardian has no authority to transfer a note of his ward without an order of Court authorizing him to do so, and a transferee takes such note subject to the rights of the ward.

3. NEGOTIABLE INSTRUMENTS—NOTES AND BILLS—REMEDIES.—A transferee of a note, non-negotiable because past due, cannot invoke the principle of purchaser for value without notice.

4. IBID.—IBID.—TRUSTEE.—When a note is payable to one as trustee, that is sufficient to put a transferee on inquiry, and he is bound by whatever disclosures such inquiry would reveal.

5. ESTOPPEL.—Under the facts in this case, the respondents are not estopped from pursuing the specific property claimed by reason of their having accepted their *pro rata* share out of proceeds of probate bond.

6. COSTS.—Decree of Circuit Judge as to costs not disturbed.

Before WITHERSPOON, J., Greenville, December, 1896. Affirmed.

Action by the bondsmen of P. W. B. Freeman, as judge of probate for Greenville County, against John C. Bailey, probate judge of said county, and public guardian, The American Bank, and Laura G. Bailey, *et al.*, of whom The American Bank and Laura G. Bailey are appellants and John C. Bailey, judge of probate, respondent.

*Mr. J. A. McCullough,* for appellants, cites: *Note not non-*

16—50

*negotiable after maturity, but transferee takes it subject to inherent infirmities:* 17 S. E. R., 791; 3 McC., 549; 2 Bail., 354; 13 S. C., 163; 13 Rich. Eq., 324. *Wards no title to notes:* 5 Strob., 72; Rev. Stat., 2184; 1 S. C., 304; 45 S. C., 133; 1 Bail., 9; 2 S. C., 442. *No resulting trust in favor of wards:* 20 S. C., 412; 1 Bail., 9; 2 S. C., 442; 59 Am. Dec., 338; 11 S. C., 561. *Administrator can sell notes:* 13 Rich. Eq., 329; 23 S. C., 438. *Ward cannot have two remedies:* 20 S. C., 418.

*Messrs. Haynsworth & Parker*, contra, cite: *Purchaser of negotiable note after maturity cannot set up plea of valuable consideration without notice:* 27 S. C., 226; 4 Rich. Eq., 113; 22 S. C., 29; 20 S. C., 384; 38 S. C., 138; 6 S. C., 159; 16 Wall., 241; 45 S. C., 86. *Notes exhibited on face enough to put purchaser on inquiry:* 2 S. C., 397; 5 Rich. Eq., 270; 3 DeS. Eq., 529; 45 S. C., 414; 30 S. C., 53. *Guardian has no power of assignment:* 11 S. C., 555; 13 S. C., 171.

Aug. 20, 1897. The opinion of the Court was delivered by MR. JUSTICE GARY. The following is a copy of the decree from which the appeal is taken: "It appears that on the   day of March, 1894, P. W. B. Freeman, late probate judge of the county of Greenville, absconded, having embezzled many thousand dollars of the funds in his hands as probate judge and public guardian. Very soon after his departure, his successor in office, John C. Bailey, instituted an action in the Court of Common Pleas for Greenville County, to recover of the bondsmen of the said Freeman the amount of their bonds. This action was entitled 'The State, *ex relatione*, John C. Bailey, etc.' Very soon after the institution of such action, these bondsmen, being the plaintiffs in this action, instituted their action against the said John C. Bailey, as probate judge and public guardian, etc., and against other parties to whom it was claimed that P. W. B. Freeman was indebted in his official capacity, ac-

knowledging their liability on the bond, offering to pay the
amount of same into Court, asking that all parties who may
have claims for which said bond was liable should be called
into this action and required to establish the amount thereof,
and praying for an injunction against all such claimants
enjoining them from instituting suit against these bonds-
men.   This complaint further alleges that the plaintiffs
were informed and believed that one Laura G. Bailey 'is
now in possession and unlawfully withholds from the judge
of probate, public guardian of Eugenia and Henry Carrier,
a certain note or obligation rightfully belonging to the es-
tate of the said two minors last above mentioned, said note
having been given to P. W. B. Freeman, as public guardian
for said children, by D. P. Verner, Esq., in the sum of $500
and interest, and assigned to the said Laura G. Bailey by
the said Freeman as collateral security for money borrowed
for individual purposes from the said Laura G. Bailey, and
that if said note was now in the hands of the public guard-
ian aforesaid, the liability of these plaintiffs as set up in the
suit now pending between these parties in the name of the
State, *ex relatione*, etc., would be greatly reduced.'   The
complaint also contains an allegation to the same effect as
to the American Bank being in possession of papers belong-
ing to the office of probate judge, but no particulars were
given as to what papers were in the hands of the American
Bank, but it was sought to make the American Bank dis-
close the same and account therefor; similar allegations were
made as to other parties, but these need not be considered
in the question now before the Court.   Laura G. Bailey and
the American Bank were both made parties defendant in
that case.   The injunction was granted as prayed for in the
complaint, restraining suit by claimants upon the bond, and
restraining the American Bank and Laura G. Bailey from
disposing of the notes and choses in action referred to.
Subsequently an order of reference was taken in the case,
requiring all claimants against the bond to establish their
demands before the master.   References were duly held by

the master, and the amount of these claims were established and reported to the Court. It appears that the amount of these claims for which the bonds would be liable was in the neighborhood of $7,000; the amount of the bond and the amount paid into the Court by the bondsmen is only $5,000.

In the answer of John C. Bailey, as probate judge and public guardian, it was claimed that the note of D. P. Verner, now in the hands of Laura G. Bailey, was in fact an investment of money belonging to the Carrier children, and held by Freeman as public guardian. It was further claimed, that a note of $750, executed by Foster and Cunningham to A. J. Mosely, administrator, and subsequently assigned to P. W. B. Freeman, probate judge, was also a part of the estate of William G. Long, a lunatic, for whom Freeman had been appointed public guardian. The answers of Laura G. Bailey and the American Bank both deny that they were in possession of any notes belonging to the office of probate judge, or which belonged to John C. Bailey as public guardian. The answer of Mrs. Bailey, however, admits that she was in possession of the note of D. P. Verner, Esq., but claimed that she was a purchaser of same for value without notice of any of the equities of the Carrier children therein, if there were any such equities. The American Bank by its answer also admitted that it was in possession of the note of Foster and Cunningham, but denied that it had any knowledge of any of the equities of any one in said note, and claimed to be purchaser for value without notice.

From time to time in the progress of this case various orders have been made herein. Amongst the orders was one of date December 4th, 1895, made by his Honor, Judge Benet, ordering a payment of twenty-five per cent. out of the fund paid into the Court upon all claims established against the bond and for which the bond was liable. After this provision the following stipulation is inserted: 'It is ordered, that all questions of costs and of the accountability of certain claimants for notes and bonds sought to be recovered in this action from Laura G. Bailey and American Bank are

reserved. The amount of the claim proved for Eugenia and Henry Carrier by the public guardian, for which the bonds-men would be responsible, unless the Verner note is reserved for the Carrier children, was $1,070.76 on March 20th, 1895, and the amount so proven for the lunatic, William G. Long, for which the bondsmen would be responsible, unless the Foster and Cunningham note is reserved, was on the same day $1,890.' Subsequently a further order requiring a pay-ment of thirty-five per cent. on all claims was made. That order also contained the same reservation contained in the order of December 4th, 1895. This sixty per cent. upon claims has been paid out of the fund paid by the bondsmen, and there remains now a small balance yet in the hands of the clerk of court for distribution amongst the claimants against the bond.

At the time of the establishment of these claims for the Carrier children and for William G. Long, the claim was asserted for them that they were entitled to respectively the notes of D. P. Verner and Foster and Cunningham in the hands of Mrs. Bailey and American Bank. The question as to this right of ownership and possession has never yet been determined, but at the July, 1896, term of Court an order was made by his Honor, Judge Townsend, referring it to John H. Earle, special referee, to take the testimony bearing upon these issues, and to report the same to this Court. In accordance with this order the testimony has been taken and reported to this Court, and upon that testi-mony the issue as to the right of ownership and possession of these notes is now before me.

The note of D. P. Verner is in the following form: '$525. One day after date, I promise to pay P. W. B. Freeman, pro-bate judge, or order, $525, for value received, interest from date, this the 14th day of April, 1891. (Signed) D. P. Ver-ner.' Upon the note appears the following indorsement: 'To secure a note given this day to Laura G. Bailey, I de-posit this as collateral security for $260. January 19th, 1892. (Signed) P. W. B. Freeman.' The note of P. W. B. Free-

man to Mrs. Bailey is also in evidence, and is a promissory note of date January 20th, 1892, in the sum of $260, due one day after date, with interest from date at the rate of eight per cent., and on this note there is an assignment of D. P. Verner for $525, heretofore referred to. The note of D. P. Verner to P. W. B. Freeman was secured by the assignment of a note for $562.50, executed by S. M. Snider to him, due the 1st day of January, 1900, with interest from date at seven per cent. per annum. This collateral note was attached to the note of D. P. Verner, and subsequently attached to the note of P. W. B. Freeman to Mrs. Bailey, and all of these notes were introduced in evidence. The note in the possession of American Bank executed by Foster and Cunningham was in the following form: '$750. Twelve months after date, we, or either of us, promise to pay A. J. Mosely, administrator *de bonis non cum testamento annexo* of the estate of Emily M. Long, deceased, or order, $750, for value received, with interest from date. Dated at Greenville, S. C., this 6th day of February, A. D. 1888. (Signed) R. C. Foster, Geo. W. Cunningham.' Upon the back of the note appears the following assignment: 'For value received, I hereby assign the within note and mortgage, which was given to secure the same to P. W. B. Freeman, probate judge, this 10th day of March, 1888. (Signed) A. J. Mosely.' This note of $750 was secured by a mortgage on certain property in the city of Greenville belonging to the said Foster and Cunningham. There further appeared indorsed on this note by said P. W. B. Freeman, various receipts for interest up to January 1st, 1891. And the note has upon its back also the indorsement, 'P. W. B. Freeman, J. P. G. C.' It appears that on the 1st day of March, 1894, P. W. B. Freeman thus indorsed the note and delivered the same to the American Bank as security for a loan of $379.50, that day made by the American Bank, for which Freeman executed his own individual note. The date of said transaction is admitted in the answer of the American Bank.

The evidence is sufficient to authorize the findings, as

matter of fact, that the Verner note of $525, payable to P. W. B. Freeman, probate judge, and claimed by Mrs. Laura G. Bailey, was held by said Freeman as public guardian of the minor children, Eugenia Carrier and Henry Carrier.

I also find, as matter of fact, from the evidence, that the note and mortgage of R. C. Foster and George W. Cunningham for $750, payable to A. J. Mosely, as administrator of Emily M. Long, and by said administrator assigned to P. W. B. Freeman, as probate judge, and indorsed officially by Freeman, and delivered to the American Bank, was held by said Freeman as public guardian of William G. Long, a lunatic.

I further find, as matter of fact, that P. W. B. Freeman hypothecated said notes to each of said parties for money loaned or advanced by said parties respectively, as collateral security for the individual note of P. W. B. Freeman to said parties for the amount so advanced or loaned. Each of said parties accepted the aforesaid securities after maturity. Under these circumstances, Mrs. Bailey and the American Bank claimed to be purchasers for value of the respective securities without notice that P. W. B. Freeman held said papers in any trust capacity. It does not appear that either Mrs. Bailey or the bank had any notice to put them upon their inquiry other than that appearing upon the face of the respective papers. They each answered that they had no other notice. They each claim to have derived title to said papers by the transfer and delivery of the papers by Freeman. The papers on their face show that Freeman acquired the papers, held as collateral by Mrs. Bailey and the bank, in his *official capacity* as probate judge. Mrs. Bailey and the bank each knew that they were dealing with Freeman as an individual, and were accepting papers after maturity, impressed on their face with the characteristics of a trust, as collateral security for the individual indebtedness of Freeman. If the collateral notes delivered by Freeman to either Mrs. Bailey or the bank were originally negotiable, they lost their negotiable character when trans-

ferred after maturity. It seems to me, under our decisions, that a negotiable note transferred or assigned after maturity is placed upon the same plane with an unnegotiable sealed note, which does not come within the rule whereby equity will protect a purchaser for valuable consideration without notice. *Patterson* v. *Rabb*, 38 S. C.

I conclude, as matter of law, that Mrs. Laura G. Bailey and the American Bank took respectively the notes and the mortgages above referred to, subject to all the equities binding upon their assignor, P. W. B. Freeman, and that they cannot claim protection as purchasers for value without notice. Whatever is sufficient to put a purchaser upon notice, that would lead to the discovery of a trust, is constructive notice. The fact that the Verner note was made payable to Freeman, as probate judge, and that the Foster and Cunningham note was assigned to Freeman, as probate judge, and by Freeman officially indorsed to the bank, it seems to me was sufficient to put Mrs. Bailey and the American Bank on inquiry as to the official capacity in which Freeman held said papers. The probate judge is *ex officio* public guardian. If such inquiry had been pursued, and the records of the probate judge's office had been examined, it could have been discovered from the books of account of the probate judge, as public guardian, put in evidence, that the probate judge held the Verner note as public guardian of Eugenia Carrier and Henry Carrier. The note and mortgage of Foster and Cunningham refer to the estate of Emily M. Long. A reference to the records in the probate office of the settlement of the estate of Emily M. Long, and to the books of account of the various estates, pp. 471 and 472, also introduced in evidence, would have indicated the capacity in which P. W. B. Freeman, as probate judge, held the note and mortgage of Foster and Cunningham as public guardian of William G. Long, a lunatic. Mrs. Laura G. Bailey and the American Bank not only failed to avail themselves of the notice furnished by the face of the papers, and the proper investigation naturally suggested by the paper

delivered to them by Freeman as collateral security, but by such failure they each have enabled P. W. B. Freeman to commit a breach of trust by the misapplication of trust funds. For this additional reason, and as each of said parties have accepted the papers as collateral securities after maturity for the individual debt of P. W. B. Freeman, I do not think that either Mrs. Laura G. Bailey or the American Bank can be protected in equity as purchasers of the securities held by them respectively for value without notice. These defendants should be regarded as holding said securities as trustees.

I conclude, as matter of law, that the defendant, John C. Bailey, successor in office of P. W. B. Freeman, as probate judge, is entitled to the Verner note, and the note and mortgage of Foster and Cunningham, as public guardian, of Eugenia Carrier and Henry Carrier, and the lunatic, W. G. Long, respectively.

It is, therefore, ordered and adjudged, that the defendant, the American Bank, do deliver to John C. Bailey, probate judge, to be held by him as public guardian, the Foster and Cunningham note, above referred to, as part of the estate of the lunatic, W. G. Long, and that the defendant, Mrs. Laura G. Bailey, do deliver to John C. Bailey, probate judge, the Verner note as aforesaid, to be held by him as public guardian as part of the estate of the minors, Eugenia Carrier and Henry Carrier. It is further ordered, that the defendants, the American Bank and Mrs. Laura G. Bailey, do each pay one-half of the costs incurred in the establishment of the aforesaid securities as belonging to the estate of the said wards, William G. Long, lunatic, and the minors, Eugenia Carrier and Henry Carrier.

"One other question arises for determination in this case: In all orders previously made in this case, the question as to whether or not the bondsman should be liable for the costs of the case, except such costs as are hereinbefore provided for, incident to the issues hereinbefore referred to, has been left open. The matter was submitted to me for

determination. I think that the action of the bondsmen in coming forward so promptly and paying their liability, is very unusual on the part of sureties and very commendable. There is no doubt that this action has been a very serviceable one, and has saved much cost and litigation in this estate. I think it would be a harsh rule which would require the bondsmen to pay the costs, when they voluntarily admitted their liability, and paid the amount thereof into Court. I, therefore, adjudge and decree, that these costs shall be paid by the clerk of this Court out of the fund now in his hands remaining for distribution, being a portion of that paid in by the bondsmen. These last costs, however, to be exclusive of the costs incident to the issues between the Carrier children and William G. Long, on the one part, and Mrs. Bailey and the American Bank, on the other, for the payment of which costs I have previously made disposition.

When the Verner and Cunningham and Foster notes are delivered to the public guardian, as aforesaid, the amount established by him against the bondsmen for the Carrier children and William G. Long should be credited with the amounts of these notes. The parties to this action have leave then to apply to this Court for the orders necessary to equalize the dividends to be paid to the several claimants against Freeman's bond. This question is, therefore, reserved for future consideration. December 30, 1896. I. D. Witherspoon, Presiding Judge, Eighth Circuit."

The following are the exceptions to the said decree:

1. In not holding that the defendant, Laura G. Bailey, was an innocent purchaser without notice of the Verner note, and, therefore, entitled to the same. In this connection: Error in holding anything contrary to the above proposition.

2. In not holding that the defendant, the American Bank, was an innocent purchaser without notice of the Foster and Cunningham note and mortgage, and, therefore, entitled to the same. In this connection: Error in holding anything contrary to what should have been held as aforesaid.

3. In not holding that by proving their claims against the bond of P. W. B. Freeman and accepting their *pro rata* of the dividends, both the Carrier children and Wm. G. Long, or their representative, was estopped from pursuing and recovering the specific property alleged to belong to the said estate, and claimed by these appellants.

4. In not ruling out all evidence going to show that the money of the Carrier children was invested in the Verner note, there being no evidence going to show that at the time of her purchase Mrs. Bailey knew of said fact.

5. In not ruling out all evidence going to show that money belonging to the estate of William G. Long, the lunatic, was invested in the Foster and Cunningham note and mortgage, there being no evidence tending to show that at the time of the purchase thereof by the American Bank that said bank knew of said fact.

6. In holding that at the time of the establishment of these claims for the Carrier children and for Wm. G. Long, the claim was asserted for them that they were entitled to respectively the note of D. P. Verner and Foster and Cunningham in the hands of Mrs. Bailey and the American Bank; there being no evidence to sustain this finding.

7. In holding that the Foster and Cunningham note and mortgage was delivered to the American Bank as security for a loan of $379.51, made by the American Bank, and for which Freeman executed his individual note; there being no evidence sufficient to sustain this finding.

8. In concluding, as a matter of fact, that the Foster and Cunningham note and mortgage claimed by the defendant, the American Bank, "was held by said Freeman as public guardian of William G. Long, the lunatic;" there being no evidence competent as against the defendant, the American Bank, to sustain such finding.

9. In concluding, as a matter of fact, that the Verner note, claimed by the defendant, Laura G. Bailey, was held by said Freeman as public guardian of the minor children,

Eugenia and Henry Carrier; there being no evidence competent as against said defendant to sustain such finding.

10. In holding that Freeman "hypothecated said notes to each of said parties for money loaned or advanced by said parties respectively as collateral security for the individual note of P. W. B. Freeman to said parties for the amount advanced or loaned;" such conclusion being as to the American Bank without evidence to sustain it. And as to Mrs. Bailey, the proof showing that the money was advanced by her to Freeman at the time the Verner note was assigned to her, and upon the express representation of Freeman that he wanted to use said money "in the settlement of an estate in his office."

11. In holding that the papers upon their face show that Freeman "acquired them in his official capacity as public guardian;" there being in this State no law authorizing or requiring the probate judge to receive or hold in any trust capacity papers of the kind in question. And in this connection: Error in not holding that the words "probate judge" on the papers in question were mere *descriptio personæ.*

12. In holding that Mrs. Bailey and the bank were dealing with Freeman as an individual, and were accepting papers after maturity impressed on their face with the characteristics of a trust as collateral security for the individual indebtedness of Freeman; these conclusions being without evidence to sustain them.

13. In holding that if the "notes delivered by Freeman to either Mrs. Bailey or the American Bank were originally negotiable, they lost their negotiable character when transferred after maturity." And in this connection: Error in holding that under the decisions of this State, and particularly *Patterson* v. *Rabb*, 38 S. C., a negotiable note transferred or assigned after maturity is placed upon the same plane with an unnegotiable sealed note; which decision "does not come within the rule whereby equity will protect a purchaser without notice." Appellants respectfully submit that the above rule is applicable alone to non-negotiable

instruments, and that in the case at bar the only equity subject to which they took the notes in question were such equities as existed in favor of the makers of said notes.

14. In holding that the fact "that the Verner note was made payable to Freeman as probate judge, and that the Foster and Cunningham note was assigned to Freeman as probate judge, and by Freeman officially indorsed to the bank," was sufficient to put said parties on inquiry. It being respectfully submitted that the Verner note was made payable to "Freeman, probate judge, or order;" thereby investing him not only with the legal title, but with the power to sell and transfer. That the Foster and Cunningham note was transferred before maturity by A. J. Mosely, administrator, to Freeman, probate judge, and there being no order of the Court at that time authorizing any transfer in his official capacity, the title of the American Bank to said paper would be good in the absence of express notice of outstanding equities, and no such notice was proven in this case. So, too, as to the title of Mrs. Bailey to the Verner note. Also, in this connection: Error in holding that the Verner note was made payable to Freeman "as" probate judge, and that the Foster and Cunningham note "as" probate judge, the word "as" not appearing on either paper.

15. In charging Mrs. Bailey or the American Bank with the duty of examining the private books of Freeman, which contained the statement of his accounts with the various estates in his charge, as public guardian, it being respectfully submitted that there is no law requiring such books to be kept, and, therefore, appellants are not bound with notice of what they contained. In this connection: Error in holding that appellants had any notice, actual or constructive, of the equities of anybody in the papers in controversy at the time they took them.

16. In ordering that the American Bank and Mrs. Laura G. Bailey do each pay one-half of the costs incurred in the establishment of the aforesaid security as belonging to the estate of the said wards, William G. Long, lunatic, and the

minors, Eugenia and Henry Carrier. It being respectfully submitted that said parties, under the pleadings and proof in this case, should not be chargeable with the said costs, either at law or in equity.

17. In ordering and adjudging that the defendant, the American Bank, do deliver to John C. Bailey, probate judge, to be held by him as public guardian, the Foster and Cunningham note above referred to as part of the estate of the lunatic, W. G. Long. It being respectfully submitted that the American Bank was a *bona fide* purchaser of the said note and mortgage without notice of the rights of the said lunatic therein, and is clothed with a legal title thereto and has equities superior to those of said lunatic therein, and, therefore, entitled to the possession thereof.

18. In adjudging that the defendant, Mrs. Laura G. Bailey, do deliver to John C. Bailey, probate judge, the Verner note as aforesaid, to be held by him as public guardian as part of the estate of the minors, Eugenia Carrier and Henry Carrier. It being respectfully submitted that the defendant, Laura G. Bailey, is a *bona fide* purchaser of said note without notice of the rights of the Carrier children therein, is clothed with a perfect legal title and has equities superior to those of said minors therein, and, therefore, entitled to the possession thereof.

The respondents' attorneys served the following notice: "Take notice that if upon the hearing of this case the Supreme Court shall be unable to affirm the decision of his Honor, Judge I. D. Witherspoon, upon the grounds upon which the said decree is based, we shall move the said Court to sustain the same, in part at least, upon the following additional grounds: 1. That even if it be held that Laura G. Bailey and the American Bank were *bona fide* purchasers for value of the Verner and the Foster and Cunningham notes, without any notice of the interest of the probate judge and public guardian therein as guardian respectively for the Carrier children and Wm. G. Long, lunatic; and that, therefore, the said Laura G. Bailey and American Bank are enti-

tled to be repaid out of the said notes the amounts advanced thereon by them, before the allowance of any interest therein to the said probate judge and public guardian for said minors and lunatic, we shall ask the said Court to decree that all excess in the said notes above what was necessary to repay the said American Bank and Laura G. Bailey the amount so advanced by them, shall belong to the said probate judge and public guardian for the said minors and lunatic, and that said notes shall be collected by the said Laura G. Bailey and the said bank; the proceeds of collection to be used, first, in repaying them the amounts so advanced by them upon the said notes, and the balance to be paid over to the said John C. Bailey, as public guardian for the said minors and lunatic, as stated."

Under the view which the Court takes of this case, many of the exceptions raise only abstract questions, which will not be considered.

The appellants' attorneys admitted in the course of their argument that there were but two main questions raised by the exceptions, to wit: *First.* Were the appellants to whom the notes were transferred, purchasers for valuable consideration without notice? *Second.* Are the representatives of the Carrier children and Wm. G. Long estopped from pursuing the specific property claimed by the appellants by reason of the fact that they proved their claims against the bondsmen of Freeman for the full amount?

In considering the questions presented by the exceptions, we will adopt the arrangement under which they were argued by the appellants' attorneys.

In reaching a conclusion as to the first question, it will be necessary to determine whether the notes belonged to the respective estates aforesaid, at the time they were transferred to the appellants. In addition to the facts contained in the decree of his Honor, the presiding Judge, the "Case" sets out the following statements of the testimony: "D. P. Verner, sworn, says: * * * I applied to him [Freeman], as probate judge, for the money, as I

understood that he had money, as probate judge, to loan."
"The following items appear upon the cash book kept by
the probate judge (being a book of accounts of the various
books of estates in his hands), page 472, being the account
as public guardian with Wm. G. Long, lunatic: 1888. Cr.
* * * May 15. By investment in note Foster and Cunning-
ham, $750." "At page 502 of Freeman's book appears his
account with the Carrier children, which account is as fol-
lows: 1891. August 5. Credit. * * * By invested in D. P.
Verner note, $500." "The introduction of these accounts in
evidence was objected to by the appellants, upon the ground
that said testimony was irrelevant and incompetent, unless
notice of the contents of such books and entries were brought
home to said appellants." It will be observed that the only
objection to said testimony was on the ground that notice
thereof was not brought home to the appellants. In the
report of P. W. B. Freeman, public guardian for Greenville
County, for the year 1891, which was examined and ordered
to be filed on March 17th, 1892, by J. H. Hudson, presiding
Judge, and which was filed on the same day, the following
appears: "1891. Estate of Wm. G. Long. Jan. 1. Invested
in Foster note, $750. * * * Estate of Eugenia and H. N.
Carrier. Aug. 5. * * * Invested in D. P. Verner note, $500."
"Report of P. W. B. Freeman, as public guardian, for the
year 1891, admitted in evidence so far as it has connection
with the claim of the Carrier children; all questions as to
the competency and relevancy of the same being reserved."
Even conceding that the foregoing testimony did not con-
stitute such records as furnished constructive notice of the
contents thereof, still it was competent, as tending to show
that the funds of the respective estates aforesaid were used
in purchasing the said notes, and that the investments were
approved by the Court.

The foregoing testimony, in connection with the other
facts set forth in the decree of the Circuit Judge, shows that
the notes were purchased with the funds of the respective
estates aforesaid, and that P. W. B. Freeman was in posses-

sion of them as public guardian for Wm. G. Long and the Carrier children, who were the owners thereof at the time they were transferred to the appellants. The notes were past due when transferred to the appellants, and, therefore, non-negotiable. Under such circumstances, P. W. B. Freeman, as public guardian, had no power or authority to transfer them without an order of the Court, and the appellants took them subject to the right of ownership of Wm. G. Long and the Carrier children.

Furthermore, the doctrine of purchaser for valuable consideration without notice has no application to a case when the right of the party invoking this principle is based upon a transfer of a note, which was non-negotiable by reason of the fact that it was past due. There are cases where the doctrine of estoppel can be effectually asserted by the transferee of non-negotiable paper, but not that of purchasers for valuable consideration without notice. But even if the plea of the purchaser for valuable consideration without notice could be interposed by the transferee after maturity of a note negotiable in form, it could not be sustained in this case. The notes show that Freeman did not hold them in his individual right, but as trustee, and there was sufficient to have put the transferees upon inquiry, which, if it had been pursued with due diligence, would have led to a knowledge of the facts. No inquiry was made of Freeman for any information touching the notes, which, as a public officer, it is presumed he would have given correctly. The exceptions raising the first question are, therefore, overruled.

We proceed to the consideration of the second question. The case contained the following statement: "At the time of the institution of this action, plaintiffs' attorney caused an injunction to be issued by his Honor, Judge Watts, restraining the defendants, Laura G. Bailey and American Bank, from disposing of any notes and mortgages received by them from P. W. B. Freeman, as alleged in the complaint. An order was passed requiring all par-

17—50

ties claiming a breach under the bond of Freeman, as probate judge, to appear before D. P. Verner, master for Greenville County, on a day or days to be named by him, to establish their claims against the said bond. Various references were held by the master, in pursuance of this order and for this purpose. At these references John C. Bailey, as probate judge and public guardian for Wm. G. Long, lunatic, and Eugenia and Henry Carrier, minors, introduced testimony for the purpose of showing their ownership in the Verner note and in the Foster and Cunningham note, hereinafter referred to. It is also admitted that the claims of the Carrier children were proved as indebtedness for the full amount against the bondsmen of P. W. B. Freeman, and that *pro rata* dividends amounting to $    have been received by them. This admission to be taken in connection with all others in the case. The question whether these orders relieved Mrs. Bailey being reserved." No question, however, as to the election of remedies was raised by the pleadings, nor was the respondent required to elect as to which of the remedies he would pursue. The bondsmen have not appealed, and as the respondent was not required to make his election as between the two remedies, the appellants are not prejudiced by the provision in the decree, that when the notes are delivered to the respondent, the amounts established for the lunatic and minors against the bondsmen should be credited with the amounts of the notes. The exceptions raising this question are also overruled.

This Court sees no reason for reversing the decree as to the question of costs.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.