### NEWHOUSE v. FIRST NAT. BANK OF CHICAGO.

(District Court, N. D. Illinois, E. D. July 22, 1926.)

No. 3856.

**1. Trusts ⊂⟹257.**

Beneficiary of trust is not necessary party to suit by trustee to recover trust funds to be held subject to the trust.

**2. Trusts ⊂⟹33—Money sent to trustee in trust deed to pay bonds secured thereby held to constitute trust fund in his hands.**

One purchasing land subject to a trust deed securing bonds, though he did not assume payment of the indebtedness, has an interest in its payment, and money sent by him to the trustee for that purpose, whether at or before maturity of the bonds, constitutes a trust fund in the hands of the trustee.

**3. Words and phrases.**

The word "appropriate" means to take to one's self, to the exclusion of others.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Appropriate—Appropriation.]

**4. Banks and banking ⊂⟹134(1)—Action of bank held not an "appropriation" of deposit to apply on notes of depositor.**

Where a bank, holding notes of a depositor giving it authority, in case of insolvency of the maker, to apply its deposit thereon, notified the depositor not to draw further checks, but later paid from the deposit checks previously drawn, its action in giving the notice was not an appropriation of the deposit, but merely intended to preserve the status quo, awaiting further action.

**5. Banks and banking ⊂⟹134(7)—Appropriation of deposit by bank to apply on depositor's notes, after notice that a part of the deposit was a trust fund, held not to give it title to such fund as against the real owner.**

A subsequent appropriation of the deposit by the bank, to apply on the depositor's notes, after it had received notice that a particular deposit was of a fund held by the depositor as trustee, gave it no title to such fund as against the real owner.

**6. Banks and banking ⊂⟹134(7)—Contract right of bank to apply deposit on notes of depositor gave it no right to so apply a part of the deposit known to be a trust fund.**

Where the sole right of a bank to apply a deposit on notes of the depositor arose out of contract in the notes, to be effective only in case of depositor's insolvency, and the general law of set-off, it had no lien in the deposit and no right to so apply a part of it, known to be a fund held by the depositor as trustee.

**7. Trusts ⊂⟹243—Succeeding trustee held not estopped to maintain suit against bank, in which trust fund was deposited by first trustee.**

A succeeding trustee, by filing a claim against the estate in insolvency of the first trustee, for the amount of a trust fund held by it, is not estopped to also maintain a suit for recovery of the fund against a bank in which it was deposited, and which had knowledge of its trust character.

**8. Election of remedies ⊂⟹2—Where actions against different persons are consistent and concurrent, doctrine of election does not apply.**

Where remedies against different persons are consistent and actions against them concurrent, the doctrine of election does not apply, and the prosecution of one does not bar prosecution of the other, but both may be prosecuted until satisfaction is obtained.

In Equity. Suit by W. O. Newhouse, trustee, against the First National Bank of Chicago. Decree for complainant.

Haight, Adcock, Haight & Harris, of Chicago, Ill., and Malcolm O. Mouat, of Janesville, Wis., for plaintiff.

Harold V. Amberg, John N. Ott, and C. Edward Dahlin, all of Chicago, Ill., for defendant.

LINDLEY, District Judge. Gold-Stabeck Company, of Minneapolis, dealer in securities and investments and trustee under certain trust deeds securing bonds, was, from and after 1909 until its receivership in 1921, a general commercial depositor of defendant in Chicago. On November 8, 1921, the depositor forwarded to defendant for deposit a check for $20,087.70, drawn on the Waterloo, Iowa, Savings Bank, payable to Clarence W. Austin, and indorsed by him to depositor,

who in turn indorsed it to defendant, who thereupon entered it to the credit of depositor, whose balance was then several thousand dollars in addition to said deposit. This check was paid on November 12th. Austin had remitted it to the Gold-Stabeck Company to retire certain bonds and interest secured by trust deed upon land, which Austin had purchased, subject to the indebtedness secured by said trust deed, without assuming such indebtedness, so far as this record discloses. Gold-Stabeck Company was trustee under the trust deed, and received the remittance as such trustee, but did not, prior to or at the time of the deposit, notify defendant of the trust character of the deposit. The bonds were not yet due, but the remittance was received to be applied upon the same, and certain tracts of land were thereupon released from the lien of the trust deed, as therein provided. Gold-Stabeck Company then owed defendant $150,000, the indebtedness being evidenced by promissory notes in collateral form (except one of $25,000), containing a provision that, in case of insolvency, defendant might appropriate the balance of the depositor upon the indebtedness represented by said notes, whether then due or not due. The defendant held certain collateral, but not of a sufficient amount to pay the entire debt, and now has a substantial loss.

On November 12, 1921, defendant received a letter calling a meeting of the creditors of Gold-Stabeck Company, to be held at the Northwestern National Bank of Minneapolis on November 15th, and thereupon wired the Gold-Stabeck Company that it would attend the conference, but expected depositor to leave its balance intact until after the conference, and caused entries to be made on its books as to the Gold-Stabeck account as follows: "Refer checks to Essroger," or "Refer checks to Anderson." Essroger was a vice president, and Anderson an assistant vice president, in the department where the account was handled. The Gold-Stabeck Company on November 14th wired to defendant in reply that it had issued no checks since receipt of the telegram of November 12th, and that it would issue none until after the conference of the 15th, but that it would expect defendant to honor checks issued before said wire was received. Essroger attended the creditors' meeting. Two witnesses testified that they told him about 9:45 a. m. of November 15th that the check on the Waterloo Bank constituted trust funds belonging to bondholders. One of these witnesses and a third witness testified that in the evening of November 15th Mr. Essroger was again told several times that the check in question constituted trust funds, and that the bank had no right to appropriate the fund to the bank's debt, and that Mr. Essroger said he would give the matter consideration, and that, if the bank had a right to appropriate the deposit, it would do so. Each of the three witnesses testified that there was no claim upon the part of Mr. Essroger that the balance had already been appropriated. Mr. Essroger admitted that in the afternoon of November 17th he was told by the officers of Gold-Stabeck Company that the check in question constituted trust funds.

All checks drawn by the Gold-Stabeck Company prior to November 12th, reaching defendant after that date, were paid in due course. They amounted to $9,715.21, and left a balance on November 16th to the credit of Gold-Stabeck Company of $38,229.62. When Essroger returned to his office in Chicago on November 16th, he caused entries to be made on his books charging off the entire balance and crediting that amount on the notes of Gold-Stabeck Company. It is to recover the sum of $20,087.70, represented by the Austin check, included in said balance, that this suit is brought.

The depositor was insolvent on November 10th; but the record seems clear that no one realized or knew that fact. An application in equity for a receiver was made in December, and the appointment duly made. The bill therein expressly averred that the Gold-Stabeck Company was not insolvent. Upon the appointment of receiver, the Gold-Stabeck Company resigned as trustee in said trust deed, and the plaintiff succeeded it as the trustee therein, and filed this suit.

In August, 1923, the plaintiff filed proof of claim in the receivership proceedings to recover the amount paid by Austin to the Gold-Stabeck Company on November 7, 1921. This claim was allowed, and dividends thereon aggregating 18 per cent. have been paid; and a further dividend of 2 per cent. will be paid.

To the suit of the plaintiff, the defendant answers that it completely appropriated the sum of money in question on November 12th; that the plaintiff is estopped to maintain this action, because of its election to file its claim in the receivership; and that the plaintiff has no right to maintain this suit, as the funds are not trust funds, because Austin was not liable to pay the debt.

[1] The plaintiff, as the trustee under an express trust, is the real party in interest. As a consequence he may follow the trust funds without joining the beneficiaries. As stated

by the Supreme Court in Carey v. Brown, 92 U. S. 171, 23 L. Ed. 469: "The general rule is that in suits respecting trust property, brought either by or against the trustees, the cestuis que trust as well as the trustees are necessary parties. Story's Eq. Pl. § 207. To this rule there are several exceptions. One of them is that, where the suit is brought by the trustee to recover the trust property or to reduce it to possession, and in no wise affects his relation with his cestuis que trust, it is unnecessary to make the latter parties. Horsly v. Fawcett, 11 Beav. 569, was a case of this kind. The objection taken here was taken there. The Master of the Rolls said: 'If the object of the bill were to recover the fund with a view to its administration by the court, the parties interested must be represented. But it merely seeks to recover the trust moneys, so as to enable the trustee hereafter to distribute them agreeably to the trusts declared. It is therefore unnecessary to bring before the court the parties beneficially interested.' Such is now the settled rule of equity pleading and practice." Applying this doctrine in various situations are the following authorities: Kerrison v. Stewart, 93 U. S. 155, 23 L. Ed. 843; Wescott v. Wayne Agricultural Works (C. C.) 11 F. 298, 303; Hickox v. Elliott (C. C.) 22 F. 13, 20; Smith v. Portland (C. C.) 30 F. 734, 737; Hunter v. Robbins (C. C.) 117 F. 920; Woodward v. Davidson (C. C.) 150 F. 840, 844; Dalton v. Hazelet, 182 F. 561, 570, 105 C. C. A. 99; Pennington v. Smith (C. C.) 69 F. 188; 39 Cyc. 548–550. Clearly the plaintiff is the proper party to maintain the present suit.

[2] Nor can there be any question that these funds were in fact of trust character. Austin was furnishing this money for the express purpose of retiring bonds. He delivered it to the trustee for the bondholders for that purpose. The trustee received it for that purpose, and the mere fact that Austin had not assumed and agreed to pay the mortgage indebtedness is wholly immaterial. Buying the property subject to the lien securing the indebtedness, he had an interest in procuring the satisfaction of the lien, and proceeded in an entirely proper manner so to do. Article 10 would seem to indicate that the trustee had a right to accept these funds before maturity of the bonds, but it is immaterial whether this be true or not. The trustee certainly had a right to receive funds for the discharge of bonds, even though they were not yet due. There is no reason why one may not anticipate the date of maturity of an indebtedness. No penalty should attach to promptness and diligence in payment of obligations, or to anticipation of maturity of debts by debtors, or to the action of a trustee who receives such funds in a fiduciary capacity for an express purpose. It appears clearly from the record that the funds received from Austin and deposited were of trust character.

[3] The important question is as to the date of the appropriation. Essroger received notice of the trust character of the funds on November 15th. The actual book entries applying the funds to the payment of the notes were made on November 16th, and unless something occurred prior to November 15th, amounting to an appropriation of the funds by the bank, the application was wrongful as against plaintiff. The word "appropriate" means to take to one's self to the exclusion of others; to use an article of property as an exclusive and pre-eminent right; to set apart for a use in exclusion of all others. See State v. Sioux City & P. R. Co., 7 Neb. 357; State v. Derham, 61 S. C. 258, 39 S. E. 379, 381; State v. Bordelon, 6 La. Ann. 68, 69; Woodward v. Reynolds, 58 Conn. 486, 19 A. 511, 512; Wulzen v. Board of Sup'rs of City and County of San Francisco, 101 Cal. 15, 35 P. 353, 356, 40 Am. St. Rep. 17; People v. Lammerts, 164 N. Y. 137, 58 N. E. 22, 24; Whitehead v. Gibbons, 10 N. J. Eq. (2 Stockt.) 230, 235. The word "appropriate" is derived from the Latin words "ad" and "proprius," and means to take as one's own by exclusive right. A thing cannot be appropriated to the use of any one person as long as any one else is allowed the use of it also. United States v. Nicholson (D. C.) 12 F. 522, 524.

[4, 5] The defendant insists that when, on Saturday, November 12th, Essroger received the letter notifying it of the creditors' meeting to be held on November 15th, and advised that all checks be referred to his assistants, it thereby evidenced intention to complete an appropriation of the funds; but it should be observed that the bank in its wire merely requested that the balance be left intact, and complied with Gold-Stabeck's request to honor all checks then outstanding. It would not seem consistent with the ordinary meaning of appropriation to say that this action upon the part of the bank was an appropriation of the funds, prior to the notice of the character of the funds received on November 15th. Manifestly the intention of the parties at that time was to preserve until after the creditors' meeting the status quo then existing. If the bank had intended by its actions to appropriate the balance then existing, it was under no necessity of wiring the Gold-Stabeck Company to preserve its balance intact, for, if it were appropriated, no balance would remain.

Defendant's action does not evidence an intention to take the balance to its exclusive use at that time. Moreover, it would seem that the record sustains the finding that Mr. Essroger, when notified of the trust character of the funds, replied that he would take them, if proper so to do, by an actual appropriation upon his return to Chicago the following day. Before that time there was no exclusive taking, no setting apart to the exclusion of the rights of all others.

The defendant, having taken the funds at a time when it was fully advised of the trust character, received no title thereto as against the real owner thereof, the plaintiff.

[6] The citation by defendant of certain cases sustaining a bank's right to rely upon a lien is beside the question. The collateral notes gave no lien upon the deposit, and the moneys represented by that deposit became merely a debt from the bank to the depositor. The bank's sole right to apply the funds arises out of the provision in the notes and the general law of set-off. Manifestly there can be no right of set-off unless the demands are responsive, one to the other; that is, there cannot be a set-off of a trustee's funds against a personal debt. No estoppel has been created by the plaintiff or its predecessors aiding the defendant, for the latter did not change its position in any particular after the deposit of the funds in question. Nor did defendant make any advances upon the credit of the deposit. Gold-Stabeck Company received no credit until after the appropriation made on November 16th.

[7, 8] Nor is the plaintiff estopped from maintaining this suit because of the fact that he filed a claim against the receiver of the Gold-Stabeck Company. The rule has long been established that there may be as many judgments as there are liabilities, but only one satisfaction. So the plaintiff had a right to a judgment against the person who converted the funds, and another against the person who received the funds and notice of their trust character before any appropriation of the same. The two remedies are not inconsistent. It is only necessary that there be only one satisfaction of the demand. Where actions against different persons are consistent and concurrent, the doctrine of election does not apply, and the prosecution of one does not bar the prosecution of the other; and an unsuccessful attempt to recover against one, in the absence of circumstances creating an equitable estoppel, will not bar an action against the other. A party may pursue any number of consistent and concurrent remedies against different persons, until he obtains satisfaction from some of them. 20 C. J. 8.

This court approves the doctrine announced by Sweet v. Bank, 69 Kan. 641, 77 P. 538. It appeared there that money had been converted wrongfully to the use of the corporation, which shortly afterward upon insolvency passed into the hands of a receiver. The court approved two actions, one the following of the funds in the hands of a receiver as a trust fund, and the other a maintenance of an action to recover against the parties because of whose wrongful acts the funds had been converted. The language used is pertinent: "There is in the two remedies no controversy as to the ownership of the trust property. There is no waiver of plaintiff's claim of ownership. There is no ratification of the act of defendants. There is no affirmance of an act or contract in the one proceeding and a disaffirmance of it in the other. The two proceedings are between different parties. There can be but one satisfaction of plaintiff's claim." See, also, Bossingham v. Syck, 118 Iowa, 192, 91 N. W. 1047; 39 Cyc. 548.

It is true a different rule abides in bankruptcy cases, but the distinction observed in bankruptcy and equity matters is well recognized. In Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640, the court pointed out that there is a distinction between bankruptcy cases and equity cases, and while bankruptcy courts may require a creditor holding other security to realize on such other securities first as a condition precedent to proving against the general assets, the rule of the chancery courts is that "no creditor can equitably be compelled to surrender any other vested rights he has in the assets of his debtor in order to obtain his vested right under the trust. It is true that in equity a creditor having a lien upon two funds may be required to exhaust one of them in aid of creditors who can only resort to the other, but this will not be done when it entrenches on the rights or operates to the prejudice of the party entitled to the double fund. Story, Eq. Jur. (13th Ed.) § 663; In re Bates, 118 Ill. 524, 9 N. E. 257, 59 Am. Rep. 383. And it is well established that, in marshaling assets as respects creditors, no part of his security can be taken from a secured creditor until he is completely satisfied." Other authorities approving the doctrine here relied upon by plaintiff, and sustaining the plaintiff's right to maintain this suit irrespective of the filing of the claim, are Stratton v. Stratton's Administrator, 149 Ky. 473, 149 S. W. 900; Wood v. Claiborne, 82 Ark. 514, 102 S. W. 219, 11 L. R. A. (N. S.) 913, 118 Am. St. Rep. 89; Free-

man v. Bailey, 50 S. C. 241, 27 S. E. 686; Greene County v. Bank of Jefferson (Iowa) 195 N. W. 3; Mass. Bonding & Insurance Co. v. Ripley County Bank (Mo. App.) 237 S. W. 182.

It follows, from what has been said, that the plaintiff is entitled to recover; that the decree should be for the total amount of the fund claimed, $20,087.70, less the dividends received and to be received from the receiver of $4,443.83, with interest on the balance from November 16, 1921, until the date of the decree at the rate of 5 per cent. per annum.

A decree accordingly may be submitted.